UNITED STATES of America, Plaintiff–Appellee,

v.

Louis E. SANTURIO, Defendant–Appellant.

No. 93–5114.

United States Court of Appeals, Tenth Circuit.

July 8, 1994.

Submitted on the Briefs: *

Michael G. Katz, Federal Public Defender, and Susan L. Foreman, Asst. Federal Public Defendant, Denver, CO, for defendant-appellant Louis E. Santurio.

Stephen C. Lewis, U.S. Atty. and James L. Swartz, Asst. U.S. Atty., Tulsa, OK, for plaintiff-appellee United States of America.

Before TACHA and BRORBY, Circuit Judges and BROWN, Senior United States District Judge.**

WESLEY E. BROWN, Senior District Judge.

The defendant, Louis Santurio, and his codefendant, Carmen Serrano, were indicted on a charge of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii). The charge resulted from evidence seized during a warrantless search of a vehicle they occupied on the Will Rogers Turnpike in Ottawa County, Oklahoma, on October 13, 1992. Prior to trial, the defendant filed a motion to suppress evidence obtained by this search and, after an evidentiary hearing, this motion to suppress was denied. The case was then tried to a jury which returned a verdict finding defendant guilty as charged. He was sentenced to 120 months imprisonment, a five-year term of supervised release, and a fine of $3,000 was imposed.[1] This appeal follows.

The defendant contends that the district court erred in denying his motion to suppress because the evidence was obtained as a result of a search which exceeded the scope of defendant's consent.

At the evidentiary hearing conducted by the Honorable H. Dale Cook, testimony for the government was presented by Gary Hornback, the state trooper who conducted the search; and defendant Louis Santurio testified in support of his motion.

According to Hornback's evidence, which the district court found to be credible, he was working on the Will Rogers Turnpike in Ottawa County, Oklahoma, on October 13, 1992, when he first saw defendant's vehicle, a 1986 V.W. van at approximately 5:13 p.m. He noticed the van because it was traveling at 64 miles per hour in a construction zone which had a reduced speed limit of 45 miles per hour. Santurio was operating the van, and Carmen Serrano, his codefendant who was in the passenger's seat, gave her name as Karla Restrepo. The defendant gave Hornback a driver's license with the name Nicolas Fraguanda, issued in the state of New Jersey. While standing next to the van, Hornback noticed a strong chemical odor coming from the vehicle which he associated with the smell of heroin.[2] When Hornback ran a check on defendant's driver's license, he found there was no record of a person named Fraguanda with a driver's license in New Jersey. Defendant told Hornback that he and "his wife" had flown to California to pick up the van for a friend and take it to Indianapolis, Indiana; and while he told the trooper he was a truck driver, the New Jersey license which he gave to Hornback was not a commercial driver's license.

---

* Both parties waived oral argument.

** Honorable Wesley E. Brown, Senior United States District Judge, District of Kansas, sitting by designation.

1. The district court granted codefendant Serrano's motion for a judgment of acquittal at the close of the government's evidence.

2. The van was actually carrying cocaine.

Hornback then asked for and obtained the driver's license of the passenger, Ms. Serrano. She gave him a Connecticut license in the name of Karla Restrepo. Hornback asked the passenger where she was going, and she said she did not understand and did not respond further to any questions asked of her. Defendant told Hornback that he and his wife lived together but, when questioned why one lived in New Jersey and the other in Connecticut, defendant became nervous.

Hornback then issued a written warning on the speed violation and handed defendant's license back. When defendant began to exit the trooper's vehicle Hornback asked to speak further with defendant. Hornback then explained that there was a lot of narcotics traffic on the interstate and asked defendant if he had any narcotics in his vehicle. Defendant replied that he did not, and Hornback asked him if he could check the vehicle. Defendant said that he "did not mind." Hornback filled out a written consent to search form and explained to defendant that the form allowed him to search the vehicle and anything in it. Defendant read the consent form and signed it with the name Fraguanda. The consent form, which was signed at 5:27 p.m., provided in pertinent part that:

> I hereby grant my consent to (Trooper) Gary Hornback, an officer of the Oklahoma Highway Patrol, to search the following: Motor Vehicle (and its contents), described as: ... Van V.W. 1986 ... License Number and State DND LEE CA....
>
> I understand that I have the right to refuse to consent to the search described above and to refuse to sign this form. I further state that no promise, threat or force of any kind, directly or indirectly, has been used to obtain my consent to the search described above or to sign this form, and that my consent to the search is absolutely voluntary.

After the form was signed, the defendant and his passenger were directed to wait in the patrol car while Hornback began his search through a side door of the van. Hornback again noticed the same chemical odor around the vehicle. The first thing found was approximately $5,700 in cash in an overnight bag. Nearby he found a mobile telephone, a sky pager, and a billfold with a Texas driver's license, under a different name, but with a defendant's picture on it. While the search was going on, defendant left the patrol car and walked over to Hornback. When questioned about the Texas license, defendant told the trooper that he had had some problems in New Jersey about his driver's license, and that his wife did not know about the money. At this point, defendant appeared to be very nervous, and Hornback directed him to return to the patrol car while he finished the search.

Hornback noticed what appeared to be a false floor in the van, and when he raised the carpeting he noticed a $2 \times 4$ and a piece of corrugated steel which did not appear to be a part of the van. At that point, Hornback called in to headquarters for a drug detection dog, which arrived within 30 minutes. The dog alerted to the presence of narcotics, and after Hornback removed a few screws in the floor he could see wrapped packages of narcotics under the false floor.

At this point, defendant was removed from the patrol car and told that he was under arrest. Hornback testified that if defendant had refused to sign the consent form, and if a dog had not been available on the scene, he would have allowed defendant to continue with his trip.

A valid search may be made of a vehicle without a warrant or probable cause when a person in control of the vehicle has given his voluntary consent to search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Whether such consent has been given is a question of fact and is determined from the totality of all of the circumstances. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The standards for determining this factual question have been set out by this court in *U.S. v. Corral,* 899 F.2d 991, 994 (10th Cir.1990), in the following manner, quoting *U.S. v. Recalde,* 761 F.2d 1448, 1453 (10th Cir.1985):

> First, there must be clear and positive testimony that the consent was unequivo-

cal and specific, and freely and intelligently given. Second, the Government must establish that consent was given without duress or coercion. Finally, we evaluate the first two standards with the traditional indulgence of the courts against a presumption of waiver of constitutional rights.

Here, the trial court properly found that defendant's consent was voluntary and that finding is supported by the evidence. Hornback testified that defendant read the form before he signed it, and defendant admitted that he had done so. Our review of the transcript of the evidentiary hearing, during which defendant testified at length concerning the stop and the search, reveals that he is knowledgeable and proficient in the English language. The consent which defendant signed states that his consent to search "is absolutely voluntary." While defendant testified that Hornback had threatened him if he did not sign the consent form and that elements of coercion were present, Hornback denied this and the trial judge found him to be the more credible witness. For these reasons, we see no merit to defendant's claim that his consent was not a voluntary one.

Defendant claims that even if the consent was properly obtained, Hornback exceeded the scope of the consent and went too far in his search of the van. While a person giving consent to a search may limit the area to be searched, a general consent to search includes closed containers within the vehicle, *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), and this court has specifically ruled that a failure to object to the continuation of a search indicates that the search was conducted within the scope of the consent given. See *U.S. v. Nicholson*, 17 F.3d 1294 (10th Cir.1994); *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1986).

In *Nicholson*, the patrolman found a spare tire that was not mounted on a rim in the camper portion of a truck and noted that there was no spare tire or spare tire carriage located underneath the back of the truck. When the officer looked at the undercarriage of the truck, he found it had been freshly painted, and markings on bolts indicated they had recently been removed. We found that the search of the entire truck, including the undercarriage, was reasonable under the circumstances of that case.

Here, Trooper Hornback also found signs of a false compartment in defendant's van. Defendant contends that the officer's effort in searching the interior of the vehicle was so invasive and destructive that it went beyond the scope of the search, but the evidence shows that Hornback merely removed a few screws from the strip holding down the carpet which covered the metal compartment containing the packages of cocaine. He did not "tear up" the van or enter the compartment until the drug detection dog alerted to the presence of narcotics. Only then did he actually remove the 2 × 4 and inspect the interior of the false compartment which contained the narcotics. His search was not so invasive as to exceed the scope of defendant's consent to the search.

Under the evidence discussed above, it is clear that defendant consented to the search of his vehicle and that Hornback's search did not exceed the scope of that consent. The district court's findings of fact on those issues were not clearly erroneous, and the order denying defendant's motion to suppress is AFFIRMED.