**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 23 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JESUS MAGALLANES,

      Defendant-Appellant.

No. 98-2238
(D.C. No. CR-97-303 HB)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL** and **LUCERO**, Circuit Judges.

Defendant-appellant Jesus Magallanes entered a conditional guilty plea to federal drug and weapons charges, and now appeals the district court's denial of his motion to suppress certain physical evidence in the case. We affirm.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# BACKGROUND

The transcript of the suppression hearing reveals the following facts. At 8:20 a.m. on April 29, 1997, Magallanes was stopped for driving 68 m.p.h. in a 55 m.p.h. zone on U.S. Highway 54, north of Carrizozo, New Mexico. Magallanes was driving a blue Peterbilt truck tractor without a trailer. Inspector Chris Mydock of the New Mexico Motor Transportation Division ran a check on defendant's license and found no problems. However, Mydock noticed that defendant paced back and forth behind the truck in a nervous manner. He also observed that the fifth wheel on the truck did not have a shiny or greasy appearance, which suggested to him that no trailer had been attached to the truck for some time. Because Mydock was alone and was concerned for his safety, he issued a speeding citation and allowed defendant to leave, but radioed ahead to fellow inspectors that the vehicle would be "a good check," meaning that he felt there was a possibility of illegal activity.

At around 9:30 a.m., fellow inspectors Virgil Mayberry and Donald Montano, on watch for the blue Peterbilt truck, clocked defendant on radar driving 58 m.p.h. in a 55 m.p.h. zone. They also noted that the tractor truck kicked up dust, indicating that it may have veered off the narrow road. The inspectors stopped defendant and gave him a verbal warning for his speed and

inattentive driving.[1]   Mayberry asked why defendant was "bob-tailing" (driving a tractor without a trailer).   Magallanes told him that he had taken an empty trailer from El Paso to Missouri but that because he did not want to wait two days for a load, he had decided to come back without a trailer.   Mayberry was suspicious of Magallanes' story, given the high expense of operating a tractor truck.   Mayberry checked defendant's paperwork, found it in order, and returned it to defendant. Mayberry testified that he then asked Magallanes for permission to search the vehicle, and that Magallanes gave his verbal consent.

Mayberry entered the tractor, found defendant's logbook, and discovered a logbook violation, for which he cited defendant.   While Mayberry filled out the citation and performed a paperwork inspection, Montano questioned Magallanes about the logbook.   The logbook revealed that defendant was making frequent stops and placing himself out of service, which Montano found suspicious. Defendant also gave inconsistent answers about his recent travels, and become nervous and confused.

Mayberry eventually presented the inspection forms and citation to defendant to sign.   Montano testified that while defendant signed the citation, Montano asked for and received defendant's verbal consent to search the truck.

---

[1]Defendant was never issued a citation for any traffic violation during this second stop.

Montano then entered the truck and discovered a brown paper bag with a large sum of cash bundled by denomination. Montano told Mayberry about the money, and signaled to Mayberry to handcuff Magallanes. Mayberry then handcuffed defendant but advised him that he was only being detained, not arrested, and that the handcuffs were for the officers' safety and defendant's own safety. At that point, Mayberry entered the truck to continue the search and discovered several packages of suspected contraband and a semiautomatic handgun. After conducting field tests on the suspected contraband, the officers read defendant his Miranda rights.

In the meantime, Sergeant Jim Stewart arrived at the scene, and asked Mayberry if a consent to search form had been signed. Mayberry asked defendant in the presence of the other two officers if he had given consent to search. Montano testified that defendant replied that he had. Magallanes then signed the consent form.

Magallanes was charged with violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c). In ruling on defendant's motion to suppress, the district court found that the stop was not pretextual, that defendant consented to the search, and that the search did not exceed the scope of defendant's consent. As a result, the court did not suppress the physical evidence seized. However, the court ruled that any statements made by defendant after being handcuffed and before being

<u>Mirandized</u> were suppressed. Magallanes entered a conditional guilty plea, and now appeals the district court's ruling with respect to the physical evidence.

## DISCUSSION

In reviewing the denial of a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous; however, the ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo. <u>See</u> <u>United States v. Botero-Ospina</u>, 71 F.3d 783, 785 (10th Cir. 1995), <u>cert. denied</u>, 518 U.S. 1007 (1996). We review the evidence on appeal in the light most favorable to the government. <u>Id.</u>

Defendant does not challenge the initial stop of his truck by Inspector Mydock; rather, he contends that the second stop by Mayberry and Montano was pretextual and therefore violated his Fourth Amendment right to be free from unreasonable searches and seizures. Defendant further argues that any consent to search that he gave should be suppressed because it was obtained after he was in custody and before he had been given any <u>Miranda</u> warnings.

A traffic stop is a seizure within the meaning of the Fourth Amendment. <u>Botero-Ospina</u>, 71 F.3d at 786. A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation. <u>See</u> <u>United States v. Villa-Chaparro</u>, 115 F.3d 797, 801 (10th Cir.) (citing <u>Botero-Ospina</u>, 71 F.3d at 787), <u>cert. denied</u>, 118 S. Ct. 326 (1997). The constitutional

reasonableness of a traffic stop does not depend on the actual subjective motivations of the individual officers involved. See Whren v. United States, 517 U.S. 806, 813 (1996). Rather, "[o]ur sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." Villa-Chaparro, 115 F.3d at 801 (quoting Botero-Ospino, 71 F.3d at 787).

Here, Officer Mayberry testified that he clocked the defendant by radar driving in excess of the posted speed limit. The district court found the officers' testimony credible, and defendant offered no contrary evidence other than his own subjective belief that he was not speeding at the time. For purposes of our Fourth Amendment analysis, the officers' actual motivation in stopping defendant is irrelevant; the stop was based on an observed traffic violation, and was therefore constitutionally reasonable under Whren and Villa-Chaparro.

Likewise, the officers' search of the truck was not constitutionally invalid. A vehicle may be validly searched without a warrant or probable cause if a person in control of the vehicle has given his voluntary consent to the search. See United States v. Santurio, 29 F.3d 550, 552 (10th Cir. 1994) (citing Schneckloth v. Bustamonte, 412 U.S. 218 (1973)). Whether voluntary consent has been given is a question of fact and is determined from the totality of the circumstances. See id. (citing United States v. Mendenhall, 446 U.S. 544 (1980)).

Here, the officers testified that they each asked for and received Magallanes' verbal consent to search the truck prior to placing him in custody. Mayberry originally asked for consent shortly after he and Montano stopped Magallanes. After the officers discovered the logbook violation and Montano become suspicious of the unusual series of stops reflected in the logbook, Montano asked for and received defendant's permission a second time to search the truck. Montano then discovered the paper bag containing cash, which led to the officers' handcuffing of defendant. As before, the district court found the officers' testimony to be credible, and Magallanes offered no testimony or evidence challenging the officers' version of events. The district court's finding that Magallenas twice gave voluntary consent to search before he was placed in custody is not clearly erroneous.[2]

Because the officers reasonably stopped defendant based on an observed traffic violation, and because the district court's finding that defendant twice gave voluntary consent to search prior to being taken into custody was not clearly

---

[2]Magallanes contends that his written consent should have been suppressed because it was obtained after he was taken into custody and before he had been given any <u>Miranda</u> warnings. Magallanes' argument might carry weight if his written consent (obtained after the searches had been conducted and while he was in custody) had been the only consent obtained by the officers in this case. However, even assuming that his written consent -- given after the searches took place -- was involuntary, his voluntary consent given prior to the searches is not somehow thereby invalidated.

erroneous, we conclude that the officers' actions did not violate the Fourth Amendment.   As a result, the district court properly denied defendant's motion to suppress.  AFFIRMED.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge