**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 26 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JESUS VALDEZ HOCKER,

      Defendant - Appellant.

No. 02-4148

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 00-CR-489-ST)**

---

Steven B. Killpack, Federal Public Defender (Scott Keith Wilson, Assistant Federal Public Defender, with him on the briefs), Salt Lake City, Utah for the Defendant-Appellant.

Melissa Holyoak, (Paul M. Warner, United States Attorney and Wayne T. Dance, Assistant U.S. Attorney on the briefs), Salt Lake City, Utah for the Plaintiff-Appellee.

---

Before **LUCERO**, **HARTZ**, and **McCONNELL**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

      This case appeals a district court denial of a motion to suppress evidence

obtained incident to the search of a car driven by the defendant but borrowed

from a person other than the registered owner.  We consider whether our earlier

decision in United States v. Rascon, 922 F.2d 584 (10th Cir. 1990), deprives the

defendant of standing to maintain his claim.  Jesus Valdez Hocker entered a

conditional guilty plea to one count of possession of methamphetamine with

intent to distribute in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting

in violation of 18 U.S.C. § 2, preserving his right to appeal the district court's

denial of his motion to suppress.  Exercising jurisdiction under 28 U.S.C. § 1291,

we reverse and remand.

## I

On the morning of October 10, 2000, Detective Knowles of the Utah

County Sheriff's Department received a call from a confidential informant, who

told him that a man with the nickname of "Gordo" was in town to conduct a drug

transaction.  In addition, the informant provided Knowles with the make, model,

color, and license plate number of the car Gordo was driving—a blue 1988

Oldsmobile Delta—and told him where the vehicle could be found.  Knowles

checked the license plate number and confirmed that it was assigned to the car

described.  He then called his partner, Detective Ferguson, who was working with

a dog-handler from the K-9 unit, Deputy Davis, and relayed the information.

Later in the afternoon, Ferguson and Davis stopped a vehicle in Provo,

Utah, matching the description.  Hocker was the driver of the vehicle, and

provided various identification cards with different names.  Davis promptly deployed a drug-sniffing dog, which entered the car and alerted to the presence of contraband.  After allegedly obtaining consent from Hocker to search the car, Ferguson found approximately one and one-half pounds of methamphetamine stowed under the driver's seat.  On running a computer search for the Vehicle Identification Number ("VIN"), Deputy Davis discovered that the car was registered to an individual named Louis Alberto Madueno.[1]  Neither party disputes that Madueno was the registered owner of the car at the time of the search.

Charged with violating 21 U.S.C. § 841(a)(1), and with aiding and abetting in violation of 18 U.S.C. § 2, Hocker sought to exclude the evidence from the car search by filing a motion to suppress in the district court.  He argued that the police lacked probable cause to conduct the search and that any subsequent consent was tainted by the illegality of the initial search.  At the evidentiary hearing, Hocker testified that he borrowed the car from a friend named Sandra Savala, whom he knew from his hometown of Sonora, Mexico.  He stated that he assumed that she either owned the car or was in the process of formally

---

[1]  The first VIN check showed that the vehicle was registered to a Mary Lynn York, but a second check revealed that Madueno was the registered owner. Deputy Davis stated that the likely reason Madueno's name did not appear the first time he ran the check on the VIN was because the registration system had not yet been updated to reflect the change in ownership.

purchasing it.  Savala possessed the car keys, had used the car regularly for the entire week during which Hocker was in town, and kept the car at her home. Hocker testified, however, that he was not sure whether Savala or her cousin Madueno, whom Hocker also knew from his hometown, was the registered owner of the car, because he did not know whether Madueno had yet sold the vehicle to Savala.  In denying the motion, the district court found that Hocker lacks standing to challenge the car search.

Hocker then entered a conditional guilty plea, preserving his right to appeal the denial of the motion to suppress.  The district court sentenced him to fifty-seven months of incarceration to be followed by thirty-six months of supervised release.  On appeal, he argues that the district court improperly concluded that he lacks standing to challenge the search.

**II**

"When the facts are uncontroverted, we review the standing issue de novo. When the facts are controverted, the factual findings are reviewed under the clearly erroneous standard, but legal issues are reviewed de novo."  United States v. Rubio-Rivera, 917 F.2d 1271, 1274–75 (10th Cir. 1990) (citations omitted).  In the instant case, the facts are uncontroverted and thus our review is de novo.

Fourth Amendment rights are personal and cannot be claimed vicariously. Rakas v. Illinois, 439 U.S. 128, 133–34 (1978).  "It is immaterial if evidence

-4-

sought to be introduced against a defendant was obtained in violation of someone else's Fourth Amendment rights." Rascon, 922 F.2d at 586. Given the personal nature of the interest, standing is a matter of substantive Fourth Amendment law. Rakas, 439 U.S. at 140. Standing inquiries thus "turn[] on the classic Fourth Amendment test: whether the individual manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as objectively reasonable." United States v. Allen, 235 F.3d 482, 489 (10th Cir. 2000) (quotation omitted).

To establish standing to challenge a car search, the defendant bears the burden of showing that he had a "legitimate possessory interest in or [a] lawful control over the car." Id. (quotation omitted) (alteration in original). Because the focus of the inquiry is on reasonable expectations, however, a defendant need not submit legal documentation showing a chain of lawful custody from the registered owner to himself. Rubio-Rivera, 917 F.2d at 1275. In resolving standing issues of this type, we consider important, but not determinative, the following factors: "(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle." Allen, 235 F.3d at 489.

In denying Hocker's motion to suppress, the district court evaluated the three factors. It found first that because Hocker did not assert ownership over the contraband seized, this weighed against exclusion. Second, the court noted that although Hocker did not explicitly testify as to his privacy expectation, he did take the stand to explain how he came to possess the vehicle. On this ground, the trial court found that the second factor weighed in favor of exclusion. The third factor—whether the defendant submitted evidence of a legitimate possessory interest in the vehicle—was declared by the court to be the critical inquiry.

Where the proponent of a motion to suppress is the car's driver but not the registered owner, mere possession of the car and its keys does not suffice to establish a legitimate possessory interest. Id.; United States v. Martinez, 983 F.2d 968, 973 (10th Cir. 1992). Rather, at a minimum, the proponent bears the burden of establishing "that he gained possession from the owner or someone with authority to grant possession." United States v. Arango, 912 F.2d 441, 445 (10th Cir. 1990). It is undisputed that Hocker did not claim that he personally obtained possession from the registered owner, Madueno. Had he done so, he would "plainly ha[ve] a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle." Rubio-Rivera, 917 F.2d at 1275; see also United States v. Orrego-Fernandez, 78 F.3d 1497, 1502 (10th Cir. 1996); United States v. Soto, 988 F.2d 1548, 1553 (10th Cir. 1993).

Because Hocker declared that he borrowed the car from Savala, who was determined at the hearing not to be the registered owner, to establish that he was in lawful possession of the car, Hocker must advance evidence showing that he reasonably believed that the lender was "someone with authority to grant possession." See Arango, 912 F.2d at 445–46 (denying standing to defendant who borrowed the vehicle from a person whom he knew was not the registered owner, and who provided no evidence suggesting that the lender was in lawful possession of the vehicle); see also United States v. Betancur, 24 F.3d 73, 77 (10th Cir. 1994) (holding that the borrower of a car lacks standing where the car registration indicates it is owned by someone other than the alleged lender, and the borrower fails to present any evidence of a linkage between the lender and registered owner); Martinez, 983 F.2d at 973 (holding that the driver of a car lacks standing where she claims she borrowed the car from a friend, who in turn borrowed it from a third person, who was not shown to be connected in any way with the registered owner). In each of these cases, the defendant was found to lack standing because he or she (1) knew that the borrowed car did not belong to the lender; and (2) failed to submit any evidence suggesting that the lender had lawful possession of the car.

Similarly, in Rascon, the defendant borrowed a car from someone named Avita, knowing that Avita was not the registered owner of the car. 922 F.2d at

585. When Avita lent the car to the defendant, he pointed to registration papers, indicating that the true owner was someone named Marcos Ortiz. Id. Avita told the defendant that Ortiz was his brother-in-law, but did not explain how he came into possession of the car. Id. at 585–86. The defendant argued that the familial relationship between Avita and the registered owner, Ortiz, established that Avita's possession was lawful, but submitted no additional evidence in support of this claim. On appeal from the district court's denial of a defense motion to suppress, we held that on these facts the defendant failed to establish that he had a legitimate expectation of privacy in the vehicle. Id. at 587.

Turning to the case at hand, like the defendant in Rascon, Hocker was driving a vehicle borrowed from a relative of the registered owner. Unlike the defendant in Rascon, however, Hocker submits other evidence, in addition to the familial relationship between the lender and the registered owner, that would lead a reasonable person to conclude that the lender was in lawful possession. First, Hocker stated that he presumed that Savala owned the car, and that if she didn't, it was only because she had not yet purchased the vehicle from her cousin. This differs significantly from Rascon and the other cases cited above, where the defendant affirmatively knew that the lender was not the owner of the car.[2]

---

[2] We are puzzled by defense counsel's suggestion at oral argument that Hocker knew that Savala was not the registered owner of the car at the time of the

(continued...)

Second, Savala had used the car as her own during the full week of Hocker's visit, and kept it at her home address. Third, Hocker knew the registered owner personally. These facts, assuming they were believed by the district court, distinguish the instant case from Rascon, Arango, Betancur, and Martinez, and lead to our conclusion that a reasonable person would assume that Savala was in lawful possession of the subject automobile.

These facts also meet the requirements of Arango, 912 F.2d at 445, i.e., that the defendant must establish that the lender was "someone with the authority to grant possession." See United States v. Obregon, 748 F.2d 1371, 1375 (10th Cir. 1984) (affirming the denial of standing in the context of a borrowed rental car). As discussed, Hocker testified that he assumed that either Savala already owned the car, or that she would soon become the formal owner. This, in conjunction with his statement that Savala openly used the car as her own during the entire

---

[2](...continued)
arrest. At the suppression hearing, counsel asked Hocker, "Did you believe the car belonged to [Savala]?" and Hocker responded, "Well, she would use it. I think so. I don't know." (2 R. at 92.) Later, counsel asked, "But because you had seen Sandra with the car for a week you thought it was hers, right?" and Hocker responded, "Yes." (Id. at 100.) Informed of the fact that Madueno was the registered owner of the car, Hocker admitted that he did not know whether Madueno or Savala was the registered owner. Recognizing this, the district court found that Hocker did not know who was the registered owner of the vehicle at the time he borrowed the car. As there is nothing in the record from which we could infer that sometime after Hocker borrowed the car but before he was arrested he became aware that Madueno was the registered owner, we disregard counsel's statement on this point.

week of Hocker's visit, if believed, would lead a reasonable person to infer that Savala had authority to lend the car, and that Hocker therefore had a reasonable expectation of privacy in the vehicle.  See Orrego-Fernandez, 78 F.3d at 1502 (noting that our standing inquiry focuses on reasonable expectations, and does not require formal legal documentation); Rubio-Rivera, 917 F.2d at 1275 (same).

Accordingly, the case is **REVERSED** and **REMANDED**.  On remand, the district court should make a credibility determination as to Hocker's testimony regarding the facts relevant to the standing inquiry, including Hocker's belief that Savala either owned the car or was soon to purchase it.  If the court finds that Hocker's testimony is credible and that he therefore has standing, the court should proceed to evaluate the merits of the Fourth Amendment challenge.