F I L E D
**United States Court of Appeals
Tenth Circuit**

**May 26, 2005**

**PATRICK FISHER
Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL ALAN CAREL,

Defendant-Appellant.

No. 04-3202
(D.C. No. 03-CR-40060-RDR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **HOLLOWAY**, and **LUCERO,** Circuit Judges.

Michael Alan Carel entered a conditional plea of guilty to possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). He preserved his right to appeal the denial of his motion to suppress evidence from a search of the vehicle he was driving. We affirm.

When reviewing the denial of a motion to suppress, "we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review the ultimate determination of

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

reasonableness under the Fourth Amendment *de novo*." *United States v. Marquez*, 337 F.3d 1203, 1207 (10th Cir. 2003). The district court found the following facts. Officer James Oehm stopped a pick-up truck Mr. Carel was driving east on I-70 in Kansas for a traffic violation, after receiving information the truck was previously stopped and searched by a different officer who was uncomfortable with the results. Mr. Carel told Officer Oehm he had borrowed the truck from his employer in California and was driving to Indiana to visit his brother and to look for a job. A computer check of the car and Mr. Carel showed the truck was not reported stolen and Mr. Carel was not wanted for any violation, but he did have a criminal history involving possession of a controlled substance and a firearm. Officer Oehm also noticed that Mr. Carel's hands and knees were trembling. He issued a warning ticket to Mr. Carel and returned his documents.

After telling Mr. Carel "that was all [he] had for him," Aple. Supp. App. at 48, Officer Oehm asked him if he would answer some more questions. Mr. Carel agreed. He told the officer that he was looking for a permanent job in Indiana as a pipe fitter, and said he did not have anything illegal in the truck. According to Officer Oehm, Mr. Carel also gave consent to search the truck. Officer Richard Jimerson arrived shortly thereafter and assisted with the search. Officer Oehm thought he saw tool marks on straps holding the gas tank underneath the truck. Because the officers knew that drug couriers sometimes carry drugs in the gas

tanks of their vehicles, they used a fiber optic scope to look inside the tank. Believing they saw bundles of drugs there, the officers took Mr. Carel to a nearby police warehouse and continued their search. They did not find drugs inside the gas tank, but Officer Jimerson noticed an area behind the glove box that appeared to have been altered, indicating a hidden compartment. Inside this compartment, the officers found eight bundles of methamphetamine.

After an evidentiary hearing on the motion to suppress, the district court held that Mr. Carel was not illegally detained, had consented to the search of the truck, and the scope of the search did not exceed that consent. Mr. Carel contests these conclusions but does not contend the traffic stop itself was illegal.

Once an officer has requested relevant documentation, run a computer check, and issued a citation, he or she must allow a driver to continue without additional delay or questioning unless "during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity" or "the driver voluntarily consents to the officer's additional questioning." *United States v. Sandoval*, 29 F.3d 537, 540 (10th Cir. 1994). Officer Oehm testified that after he returned Mr. Carel's paperwork, he "asked [Mr. Carel] if I could ask him a few questions. He stated that I could. And I proceeded to carry on the conversation with him." Aple. Supp. App. at 48. The district court found that Mr. Carel consented to answering further questions,

a finding Mr. Carel contests. We need not decide whether Mr. Carel voluntarily consented to the additional questioning because we conclude that Officer Oehm was justified in continuing the detention based on reasonable suspicion.

An officer conducting a traffic stop must point to "specific and articulable facts and rational inferences drawn from those facts" that give rise to a reasonable suspicion of criminal activity in order to extend the detention of a driver. *United States v. Fernandez*, 18 F.3d 874, 878 (10th Cir. 1994) (quotation omitted). "We determine whether reasonable suspicion exists by assessing the totality of the circumstances." *Id.* We defer to "a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances," *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997), "remembering that reasonable suspicion represents a 'minimum level of objective justification' which is 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

Officer Oehm testified that he observed the following factors during the traffic stop: 1) Mr. Carel was driving a truck he did not own, a common tactic for drug couriers; 2) the truck belonged to his employer in California, although he said he was driving it to Indiana to look for another job; 3) he had a criminal history involving possession of a controlled substance and a firearm; 4) he was coming from California, a known drug source, and traveling to Indiana, a delivery

point along route I-70, a common drug route; and 5) his hands and knees were trembling more than the average driver. While we have cautioned that either nervousness or prior criminal involvement alone does not establish reasonable suspicion, these factors may be considered in conjunction with other specific and articulable facts. *See Fernandez*, 18 F.3d at 880 (nervousness); *Sandoval*, 29 F.3d at 542 (collecting cases that appropriately consider prior criminal activity coupled with other factors supporting reasonable suspicion). Here, Mr. Carel's travel plans, which involved, *inter alia*, driving a vehicle belonging to his employer from California to Indiana to search for another job, were unusual or even implausible. *See, e.g., Mendez*, 118 F.3d at 1431-32 (contradictory or implausible travel plans a factor in reasonable suspicion analysis). Based on the totality of these and the other circumstances present in this case, we conclude that Officer Oehm had reasonable suspicion to support the continued detention of Mr. Carel.

Mr. Carel also contends he did not voluntarily consent to the search of his truck.[1] The government bears the burden of proving the consent was in fact

---

[1]The government contests Mr. Carel's standing to object to the search of the truck because he had no ownership interest in it. The district court found that Mr. Carel had standing based on his undisputed and credible testimony that he had permission to drive the truck. Our case law supports the court's conclusion. *See, e.g., United States v. Valdez Hocker*, 333 F.3d 1206, 1208-09 (10th Cir. 2003) (Drivers who credibly testify they had permission to drive from the registered owner, "plainly have a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle.").

voluntary. *Florida v. Royer*, 460 U.S. 491, 497 (1983). It "must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." *United States v. Soto*, 988 F.2d 1548, 1557 (10th Cir. 1993).

We uphold the district court's finding of consent unless it is clearly erroneous. *United States v. Sanchez-Valderuten*, 11 F.3d 985, 990 (10th Cir. 1993). Officer Oehm testified that he "asked [Mr. Carel] if he was traveling with anything illegal in the vehicle. He stated that he was not. I asked him if I could search the vehicle for drugs or weapons . . . . He said yes, and then he also quickly told me that he had already been searched earlier." Aple. Supp. App. at 49. Although Mr. Carel testified he told Officer Oehm he did not consent to the search, the district court found Officer Oehm's testimony to be more credible. "Assessment of the credibility of witnesses is the prerogative of the trial court, not an appellate court, which neither sees nor hears the witnesses." *United States v. Pena*, 920 F.2d 1509, 1513 (10th Cir. 1990). In assessing Mr. Carel's credibility, the court noted it had conducted two evidentiary hearings but Mr. Carel did not testify he had refused consent to search until the second hearing. In fact, Mr. Carel failed to raise lack of consent in his original motion to suppress. "Consent to search may be voluntary even though the consenting party is being detained at the time consent is given." *United States v. Doyle*, 129 F.3d 1372,

1377 (10th Cir. 1997) (citing *United States v. Watson*, 423 U.S. 411, 424 (1976)). Whether a person has voluntarily consented to a search is a question of fact that the district court evaluates in view of the totality of the circumstances. *Id.* In this case, in addition to evaluating the credibility of the testifying witnesses, the court reviewed a video of the stop taken from Officer Oehm's patrol car, and observed that it contained no evidence of police intimidation, threat, or coercion. On this record, we are not persuaded the court's finding of voluntary consent is clearly erroneous.

Mr. Carel maintains that even if he did give consent, Officer Oehm's use of a fiber optic scope exceeded the scope of consent. He also contends Officer Jimerson's further search at the police warehouse, which uncovered the hidden compartment behind the glove box, was not justified. The general standard for measuring the scope of consent is that of "objective reasonableness." *United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir. 1998). If a suspect "does not limit the scope of a search, and does not object when the search exceeds what he later claims was a more limited consent," an officer may search the entire vehicle. *United States v. Bustillos-Munoz*, 235 F.3d 505, 515 n.5 (10th Cir. 2000); *United States v. Santurio*, 29 F.3d 550, 553 (10th Cir. 1994); *Pena*, 920 F.2d at 1512, 1515. Mr. Carel admitted he did not object to the extent of the search. Given the totality of the circumstances here, a typical reasonable person in Mr. Carel's

position would have understood that a general and unrestricted consent to a full search of a vehicle included the entire vehicle and every place inside it where contraband could be hidden, unless he otherwise objected. The search of the truck, including both the gas tank and the glove box, did not exceed the scope of Mr. Carel's voluntary consent.[2]

For the aforementioned reasons, we **AFFIRM** the district court's denial of Mr. Carel's motion to suppress.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge

---

[2]Mr. Carel argues that once Officer Oehm failed to locate drugs in the fuel tank of his truck, he was not justified in further searching the glove box. This argument ignores the district court's finding that Officer Jimerson's search of the glove box of the truck occurred simultaneously with Officer Oehm's continued search of the fuel tank.