**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**April 7, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JVAN JACKSON, a/k/a Jay Van Jackson, III, a/k/a "Little Jay",

    Defendant - Appellant.

No. 24-1505
(D.C. No. 1:23-CR-00360-REB-1)
(D. Colo.)

### ORDER AND JUDGMENT[*]

Before **BACHARACH**, **MORITZ**, and **FEDERICO**, Circuit Judges.

Jvan Jackson appeals the district court's order denying his motion to suppress evidence discovered in three separate warrantless vehicle searches. We affirm. Jackson lacks Fourth Amendment standing to challenge the first search. Turning to the second search, officers had reasonable suspicion to stop Jackson's vehicle and, upon observing drug paraphernalia in plain view, probable cause to search it. And for

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

the third challenged search, officers had probable cause to search Jackson's vehicle for evidence of drug distribution.

## Background

In February 2023, Denver police were alerted to possible illegal drug distribution involving a silver Cadillac routinely parked in a specific spot in a particular apartment complex's garage. Investigators learned that Jackson lived in the complex and owned the Cadillac. Between March 13 and 16, officers surveilled the Cadillac in the garage. On at least two occasions, they observed suspected associates of Jackson operating vehicles that had been reported stolen. The three warrantless vehicle searches at issue followed, on March 16, March 31, and April 18. We describe the circumstances of each search below; for now, it suffices to say that officers discovered incriminating evidence during each search.

A grand jury indicted Jackson on three drug crimes. After the district court denied Jackson's motion to suppress, he pleaded guilty to one count of possessing fentanyl with the intent to distribute. The district court sentenced him to 168 months in prison and five years of supervised release. Jackson's plea agreement reserved the right to appeal the suppression order, and he appeals accordingly.

## Analysis

"When reviewing the district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous." *United States v. Tolbert*, 92 F.4th 1265, 1273 (10th Cir. 2024) (quoting *United States v. Grimmett*, 439 F.3d

1263, 1268 (10th Cir. 2006)). "We review legal questions de novo," *id.* (quoting *United States v. Neugin*, 958 F.3d 924, 929 (10th Cir. 2020)), including the "threshold question" of Fourth Amendment standing, *United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009).

We address each search in turn, setting out the relevant factual details before assessing their legal implications.

## I.    March 16 Search

While surveilling the silver Cadillac parked in its usual spot, Detective Jes Sandoval watched as a silver Toyota parked near the Cadillac. After the detective learned that the Toyota's temporary tag was assigned to a Nissan truck, police conducted a traffic stop of the Toyota on a public street after it left the garage. Jackson was driving the Toyota. He told the officers that the car didn't belong to him but that he was thinking of buying it from a friend's daughter's girlfriend. However, he was unable to provide that person's name. Nor was he able to produce any insurance or other ownership documents for the vehicle, even after consenting to a search of the glove compartment for such documents. The officers impounded the Toyota and conducted an on-scene inventory search. They discovered a scale, fentanyl, methamphetamine, and a stolen license plate.

In rejecting Jackson's motion to suppress this evidence, the district court determined Jackson lacked Fourth Amendment standing and, further, that the decision to impound the vehicle was proper under the Fourth Amendment. Jackson

challenges both rulings. But because we conclude Jackson lacked standing, we do not consider whether officers properly impounded the vehicle.

Because Fourth Amendment rights are personal, "a defendant raising a Fourth Amendment challenge must first demonstrate that he has standing to object to the search." *Poe*, 556 F.3d at 1121. To determine whether Fourth Amendment standing exists, we "inquire whether the defendant has established (1) a subjective expectation of privacy in the property searched, and (2) that society would recognize that expectation of privacy as objectively reasonable." *United States v. Guzman*, 149 F.4th 1132, 1139–40 (10th Cir. 2025) (quoting *United States v. Marchant*, 55 F.3d 509, 513 (10th Cir. 1995)). Individuals who do not have lawful possession of a vehicle do not have an objectively reasonable expectation of privacy, "[n]o matter the degree of possession and control" they exercise over it. *Terrence Byrd v. United States*, 584 U.S. 395, 409 (2018). Thus, Jackson bears the burden to show that his presence in the searched vehicle was lawful to the extent he had the permission of either the vehicle's owner or someone with authority to grant permission. *See United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003). In making that determination, we consider several nondeterminative factors, including whether the defendant asserted ownership over items seized from the vehicle, testified to his expectation of privacy at the suppression hearing, or presented testimony indicating his legitimate possessory interest. *Id.*

None of these factors favor Jackson. He points to no evidence that he asserted ownership over items in the vehicle and did not testify about his legitimate

expectation of privacy. Moreover, no evidence indicates that he had permission from either the lawful owner or someone with authority to permit him to drive the vehicle. At best, Jackson points to his statement to officers that he was considering buying the car from a friend's daughter's girlfriend. Yet there is no record evidence indicating that the friend's daughter's girlfriend, whomever she may be, is either the registered owner or someone with authority to give Jackson permission to drive the vehicle. Under these circumstances, we agree with the district court that Jackson failed to show his lawful, permitted presence in the vehicle. *See, e.g.*, *United States v. Rascon*, 922 F.2d 584, 587 (10th Cir. 1990) (holding that defendant lacked standing when evidence and testimony indicated that he had borrowed the car from a friend but "there was a complete absence of evidence concerning [the friend's] possession of the car").

In his reply brief, Jackson argues that he has standing because the Toyota was parked in a spot he was known to use. But that fact goes only to Jackson's possession and control of the Toyota, not whether his possession and control was lawful or permitted. In other words, it does nothing to distinguish Jackson's possession and control from the possession and control exhibited by an unlawful possessor.

Because Jackson has failed to demonstrate that he has standing to object to the March 16 search, we affirm the district court's denial of his motion to suppress related to that search.

II.    **March 31 Search**

About two weeks later, while Sandoval was surveilling a gas station and convenience store known to be a hub for illegal narcotics, he recognized Jackson driving a silver Audi into the parking lot with two passengers in the vehicle. Sandoval watched as Jackson stopped at the gas pumps, one of the passengers got out of the car and went into the convenience store, and an unknown woman approached and spoke with Jackson. After speaking with the woman, Jackson drove the Audi away from the pumps and parked next to Sandoval's vehicle in front of the convenience store. Sandoval testified that the passenger who went inside the store then returned and stood on the sidewalk in front of the two cars, joined by the unknown woman and another unknown man.

At that point, the unknown woman and the passenger walked to an apartment complex next to the gas station while Jackson remained in the Audi. When the passenger returned to the Audi, Jackson drove it to an adjacent restaurant parking lot. Two unknown individuals approached the Audi and positioned themselves, one on each side of the Audi, before speaking into the vehicle through the rolled-down windows. Although Sandoval did not directly observe drugs being exchanged, he radioed other officers and asked them to make contact with the Audi.

The officers ordered Jackson and his passengers to exit the vehicle and detained them. After observing a "twisted metal pipe" on the front seat, which they believed to be drug paraphernalia, they searched the Audi's passenger compartment. R. vol. 1, 190. Inside a backpack on the backseat, officers discovered a plastic bag

containing fentanyl and Jackson's wallet. Jackson admitted the backpack and wallet were his but denied ownership of the drugs.

The district court concluded that the officers had reasonable suspicion for an investigatory stop of the Audi based on Sandoval's observations of what he believed, based on his training and experience, to be hand-to-hand drug exchanges, particularly when combined with the fact that Sandoval knew officers had found drugs in the Toyota that Jackson drove in the March 16 stop. The district court further reasoned that the drug paraphernalia in plain view inside the vehicle provided probable cause to search the Audi for "evidence of unlawful drug transactions." *Id.* at 201.

On appeal, Jackson primarily challenges reasonable suspicion to stop the Audi, arguing that the officers lacked facts individualized to him because only the passengers were acting suspiciously, not him. He also implies that the conduct Sandoval observed was susceptible to an innocent explanation.

We find these arguments unconvincing. Reasonable suspicion requires a "particularized and objective basis for suspecting the particular person stopped of criminal activity" based on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417–18 (1981); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (holding courts must evaluate totality of the circumstances in determining reasonable suspicion). The record here demonstrates that Sandoval had a sufficiently particularized and objective basis to suspect Jackson of drug trafficking. For one thing, Jackson interacted with the unknown woman who approached his vehicle at the convenience store and who then participated in the offsite interaction with Jackson's

passenger. For another, he was in the driver's seat in the restaurant parking lot when two other unknown individuals approached the Audi and spoke to those inside. And though the actions of the Audi's passengers at the convenience store and the restaurant could have an innocent explanation, we typically defer to officers' "professional experience distinguishing between innocent and suspicious actions." *United States v. Huerta*, 166 F.4th 866, 875 (10th Cir. 2025) (quoting *United States v. Gurule*, 935 F.3d 878, 885 (10th Cir. 2019)). Such deference is appropriate here, where Sandoval personally observed "[m]aybe a hundred" instances of drug trafficking in the convenience store's parking lot, R. vol. 3, 69; observed multiple unknown individuals engage in a series of interactions in that parking lot; and recognized Jackson—a person Sandoval knew from the March 16 search had previously possessed drugs and drug paraphernalia in his vehicle—as the Audi's driver. Together, those facts created reasonable suspicion to stop the Audi, even though Sandoval never directly observed any drug exchange. *See United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004) (holding officer can have reasonable suspicion based on "a particularized and objective basis for suspecting an individual may be involved in criminal activity . . . even if it is more likely than not that the individual is *not* involved in any illegality").

Such facts also distinguish the out-of-circuit decision Jackson relies on, *United States v. Keith*, 559 F.3d 499 (6th Cir. 2009). There, the Sixth Circuit found reasonable suspicion lacking where officers observed two men interact outside of a liquor store late at night, saw one of the men lean into the window of the second

man's car and glance at the officers, and watched the men move out of view to the other side of the liquor store. *Id.* at 505–06. Crucially, the officers in *Keith* testified that neither had previously observed drug trafficking in the liquor store's parking lot and neither knew any other facts about the two men. *Id.* at 505. Here, by contrast, the detective knew Jackson had been found with drugs in his car just two weeks earlier, and the detective had observed many drug transactions at the convenience store. We thus affirm the district court's conclusion that the officers had reasonable suspicion to stop the Audi.

To the limited extent that Jackson separately challenges the subsequent search of the Audi, we reject his argument. Once officers permissibly stopped the Audi, they observed drug paraphernalia in plain view. This, in combination with reasonable suspicion of drug trafficking in the parking lot involving Jackson—an individual who'd previously been found with drugs—suggested "a fair probability that the vehicle contain[ed] contraband." *United States v. Ledesma*, 447 F.3d 1307, 1316 (10th Cir. 2006). That gave rise to probable cause to search the Audi for illicit use of drugs. *See United States v. McGehee*, 672 F.3d 860, 869 (10th Cir. 2012). And the scope of the permissible search extended to the backpack. *See United States v. Ross*, 456 U.S. 798, 824 (1982) ("The scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found."). Accordingly, we affirm the denial of Jackson's motion to suppress as to the March 31 search.

### III.    April 18 Search

Sometime in April 2023, Denver police received renewed reports of possible drug distribution at Jackson's apartment complex. On April 18, Sandoval returned to the complex and observed an unidentified man approach and enter Jackson's apartment pulling a suitcase. Sandoval then went to the parking garage and ran the license plate of a Jeep Compass parked in a spot where Jackson's visitors often parked. The Jeep was registered to Sherry Coats, whose driver's license had been revoked. The unknown man, accompanied by Jackson and two women, left Jackson's apartment with the suitcase approximately an hour later, entered the parking garage, and approached the Jeep. Jackson put a duffel bag into the Jeep's trunk, and all four individuals got in the Jeep. The Jeep drove to a second location in the garage and jumpstarted the same Audi involved in the March 31 stop; the two women and the unknown man then left the garage in the Jeep. Jackson stayed behind.

Officers stopped the Jeep for traffic violations. When they did so, they observed burned foil, which they believed to be drug paraphernalia, in plain view. An officer reached into the Jeep to retrieve the burned foil and detected the odor of burned fentanyl. Officers then searched the vehicle and recovered sizable quantities of fentanyl and methamphetamine.

The unknown male with the suitcase was identified as Monserrate de Jesus; after being advised of his rights, he admitted to smoking fentanyl in Jackson's apartment that day and indicated that Jackson had provided him with the fentanyl. One of the unknown women, identified as Brianna Truxillo, was also advised of her

rights and similarly admitted to smoking fentanyl in Jackson's apartment and to receiving drugs from Jackson. The other female passenger was identified as Coats (the registered owner of the Jeep); Truxillo said Coats was one of Jackson's "workers." R. vol. 1, 193.

During the traffic stop of the Jeep, Sandoval saw the Audi arrive nearby and stop in two different positions from which the driver could observe the traffic stop. When the stop ended, the Audi drove back toward the apartment complex. Officers—concerned that the Audi's driver would return to the apartment complex to destroy evidence—stopped the Audi, identified Jackson as the driver, and arrested him on suspicion of drug distribution. Officers then searched the Audi and recovered a large amount of cash from a backpack on the driver's side floorboard.

The district court found that the officers had probable cause to search the Audi for "contraband and other evidence of unlawful drug distribution." *Id.* at 202. Challenging that assessment, Jackson argues that though officers may have had probable cause to believe there was evidence of unlawful drug distribution in his apartment and in the Jeep, such probable cause did not extend to the Audi.

Law enforcement has probable cause to search a vehicle when there is a "fair probability" that it contains contraband. *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008) (quoting *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001)). The fair-probability standard is "understood to mean something more than a 'bare suspicion' but less than a preponderance of the evidence

at hand." *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014) (quoting *United States v. Ludwig*, 641 F.3d 1243, 1252 (10th Cir. 2011)).

On these facts, there was a fair probability that the Audi contained contraband. The occupants of the Jeep told officers that Jackson had supplied them with drugs that same day at the apartment complex. Jackson was known to drive a silver Audi, and officers observed the Audi's driver watching the traffic stop of the Jeep. The Jeep contained controlled substances, indicating that Jackson's known associates transported controlled substances in vehicles, implying that Jackson might do the same. And finally, just a few weeks prior, officers discovered drug paraphernalia and fentanyl in the same Audi being driven by Jackson. Thus, officers had far more than a "bare suspicion" that Jackson was the Audi's driver—a point Jackson never contests—and far more than a "bare suspicion" that Jackson had controlled substances intended for distribution in the Audi. *Denson*, 775 F.3d at 1217 (quoting *Ludwig*, 641 F.3d at 1252).

Because the officers had probable cause to stop and search the Audi, including any compartments likely to contain contraband, *see Ross*, 456 U.S. at 824, we affirm the district court's denial of Jackson's motion to suppress as to the April 18 search.[1]

## Conclusion

Based on our conclusions that Jackson lacks standing to challenge the first warrantless vehicle search and that the other two searches were constitutionally

---

[1] Having affirmed on the existence of probable cause, we need not reach the government's argument that this search was justified as a search incident to arrest.

permissible, we affirm the district court's order denying Jackson's motion to suppress.

Entered for the Court


Nancy L. Moritz
Circuit Judge