**UNITED STATES of America, Plaintiff,**

v.

**Ronald TAYLOR, et al., Defendants.**

**No. 3:04cr130.**

United States District Court, S.D. Ohio, Western Division.

April 27, 2006.

---

Robert A. Knief, Pamela M. Stanek, United States Attorney's Office, Dayton, OH, for Plaintiff.

Ben M. Swift, Swift & Bursey, Gary Wayne Crim, Thomas W. Anderson, Federal Public Defender, Dayton, OH, Phillip Douglas Lehmkuhl, Mt. Vernon, OH, for Defendants.

DECISION AND ENTRY OVERRULING, AS MOOT, MOTION TO SUPPRESS EVIDENCE FILED BY DEFENDANT ELBERT ROBINSON (DOC. # 65); DECISION AND ENTRY OVERRULING AMENDED MOTION TO SUPPRESS EVIDENCE FILED BY DEFENDANT ELBERT ROBINSON (DOC. # 68); DECISION AND ENTRY OVERRULING, AS WITHDRAWN, MOTION TO SUPPRESS EVIDENCE FILED BY DEFENDANT DANIELLE GARVIN (DOC. # 69); DECISION AND ENTRY OVERRULING, AS WITHDRAWN, MOTION TO SUPPRESS EVIDENCE FILED BY DEFENDANT RONALD TAYLOR (DOC. # 75); GOVERNMENT'S MOTION FOR STATUS CONFERENCE (DOC. # 135) SUSTAINED; CONFERENCE CALL SET

RICE, District Judge.

Defendants Ronald Taylor ("Taylor"), Richard Auston ("Auston"), Elbert Robinson ("Robinson") and Danielle Garvin ("Garvin") are each charged in Count 1 of the Superseding Indictment (Doc. # 23) with conspiring to distribute and to possess with intent to distribute more than 150 kilograms of cocaine, in violation of 21 U.S.C. § 846. Taylor is also charged in Count 2 with operating a continuing criminal enterprise, in violation of 21 U.S.C. § 848. Auston, in Count 3, and Robinson and Garvin, in Count 4, are all charged with interstate travel to further an illegal activity, in violation of 18 U.S.C. § 1952.[1]

Taylor, Robinson and Garvin have each filed a motion seeking the suppression of evidence.[2] With his motion, Taylor re-

---

1. The Superseding Indictment (Doc. # 23) also seeks forfeiture of real and personal property belonging to Taylor and Auston.

2. The four Defendants have filed numerous other motions, which the Court addresses by separate entries.

854

quests that the Court suppress the evidence that was seized when search warrants were executed at three locations in California on July 27, 2000, as well as the statements he provided to officials of the Los Angeles County Sheriff's Department on that date. *See* Doc. # 75. With their motions, Robinson and Garvin request that the Court suppress the 41 kilograms of cocaine that were seized from the gold Lincoln Navigator in which they were traveling by officers of the Nebraska State Patrol, as a result of a traffic stop occurring on Interstate 80 in western Nebraska in March, 2001. *See* Docs. ## 68 (Robinson) and 69 (Garvin).[3] The Court conducted an oral and evidentiary hearing on these motions over six days.[4] At the conclusion of that hearing, the Court directed the parties to file simultaneous memoranda 21 days after the filing of the transcripts from the hearing, and afforded them the opportunity of filing simultaneous reply memoranda 14 days thereafter. *See* Transcript of November 14, 2005, Oral and Evidentiary Hearing (Doc. # 118)

at 84. Although Robinson and the Government have filed post-hearing memoranda (*see* Docs. ## 126, 134 and 137), neither Taylor nor Garvin has done so. Therefore, the Court concludes that those Defendants have waived their requests to suppress evidence and overrules, as withdrawn, Garvin's Motion to Suppress Evidence (Doc. # 69) and Taylor's Motion to Suppress Evidence (Doc. # 75).[5] The Court now rules upon Robinson's request to suppress evidence.

On March 16, 2001, Jeff Crymble ("Crymble"), a trooper employed by the Nebraska State Patrol, stopped a gold Lincoln Navigator on Interstate 80, east of the Nebraska–Colorado border, because that vehicle was traveling at a speed greater than the posted speed and had been driven across the white marker which divides the traveled portion of the road from the shoulder.[6] That vehicle was being driven by Robinson. Crymble returned to his police vehicle where he wrote two warning tickets to Robinson for the two traffic offenses. He then walked back to the Lin-

3. Since Robinson's Motion to Suppress Evidence (Doc. # 65) has been replaced and superseded by his Amended Motion to Suppress Evidence (Doc. # 68), the Court overrules the former such motion, as moot.

4. In particular, that oral and evidentiary hearing was conducted on April 22, 2005, June 13 and 15, 2005, October 11 and 12, 2005, and November 14, 2005.

5. With her Motion to Suppress Evidence (Doc. # 69), Garvin has merely joined in the motion filed by Robinson. Below, the Court concludes, *inter alia*, that Robinson is without standing to seek the suppression of the evidence that was seized from the Lincoln Navigator. Given that Robinson was the driver of that vehicle, while Garvin was merely a passenger, she has even less of a legitimate expectation of privacy in that vehicle. Accordingly, if she had not waived her request to suppress evidence, the Court would have concluded that she, like Robinson, lacked standing to seek such relief.

If the Court's assumption that Taylor has waived his motion is incorrect, he must file a paper so indicating, within seven *calendar* days of date. If he has not waived that motion, the Court will vacate its decision herein on Taylor's motion and set a new briefing schedule. The Court will not have all papers needed to rule with finality on Taylor's motion, until the latter of the passage of seven days, or the parties have completed briefing under the new briefing schedule. Therefore, the speedy trial clock will not begin to run until seven calendar days from date, at the earliest. *See Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986) (holding that the speedy trial clock is tolled in accordance with 18 U.S.C. § 3161(g)(1)(F), while a court is waiting for the parties to file all necessary materials).

6. A video and audio tape of that stop was introduced into evidence as Government's Exhibit No. 1.

coln Navigator and returned Robinson's driver's license, gave him the two warning tickets and explained that there would be no fine or penalty associated with them. Crymble also warned Robinson about driving over the speed limit and staying on the traveled portion of the highway. Crymble then asked Robinson for permission to search the gold Lincoln Navigator for weapons, drugs and large sums of cash. Robinson agreed to that request. As a consequence, Crymble retrieved his drug detection dog, Rocco, from his police vehicle, and walked it around the Lincoln Navigator, after which he and Rocco entered the interior of that vehicle in order to permit the canine to sniff therein. Subsequently, officers searched the Lincoln Navigator, discovering 41 kilograms of cocaine.

Robinson has not challenged the lawfulness of the stop of the Lincoln Navigator. He has, however, presented a number of arguments in support of the proposition that the search of that vehicle violated the Fourth Amendment. In addition to disputing Robison's arguments in that regard, the Government contends that, since Robinson was without a reasonable expectation of privacy in the gold Lincoln Navigator, he is without standing to seek the suppression of the cocaine that was seized from that vehicle. *See* Doc. # 134 at 2. As a means of analysis, the Court will initially address the Government's assertion that Robinson did not have a reasonable expectation of privacy in the Lincoln Navigator.

■ It is axiomatic that a defendant has the burden of showing that had a reasonable expectation of privacy in the area searched. *Rakas v. Illinois,* 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Berryhill,* 352 F.3d 315, 316–17 (6th Cir.2003), *cert. denied,* 542 U.S. 944, 124 S.Ct. 2924, 159 L.Ed.2d 824 (2004). If Robinson had proved that he was the owner of the Lin-

coln Navigator, this Court would, without hesitation, conclude that he has standing, given that courts have generally held that the owner of a vehicle has a reasonable expectation of privacy therein. *See · e.g., Government of Virgin Islands v. Williams,* 739 F.2d 936, 939 (3d Cir.1984); *United States .v. Cella,* 568 F.2d 1266, 1284 (9th Cir.1977); *United States v. Wisniewski,* 358 F.Supp.2d 1074, 1085 (D.Utah 2005). *Accord,* 6 LaFave, *Search and Seizure,* § 11.3(e) . (4th Ed.2004). However, Robinson has failed to present any evidence in support of the proposition that he owned the Lincoln Navigator that he was driving when it was stopped and searched by Crymble. Therefore, the question becomes whether Robinson, as the driver of that vehicle, not its owner, had a reasonable expectation of privacy in it. As a means of analysis, the Court will initially discuss the manner in which courts have resolved the question of whether a the driver of a vehicle, who is not its owner, has a reasonable expectation of privacy in that vehicle and, thus, standing to seek the suppression of the evidence seized from it.

In *United States v. Valdez Hocker,* 333 F.3d 1206 (10th Cir.2003), the Tenth Circuit noted that a person must have a "legitimate possessory interest in or lawful control over" a vehicle, in order to have a reasonable expectation of privacy in it and, thus, standing to seek the suppression of the evidence seized therefrom. *Id.* at 1209. With respect to the driver of a vehicle who is not its owner, the court wrote:

> Where the proponent of a motion to suppress is the car's driver but not the registered owner, mere possession of the car and its keys does not suffice to establish a legitimate possessory. interest. [*United States v. Allen,* 235 F.3d 482, 489 (10th Cir.2000) ]; *United States v. Martinez,* 983 F.2d 968, 973 (10th Cir.1992). Rather, at a minimum, the

proponent bears the burden of establishing "that he gained possession from the owner or someone with authority to grant possession." *United States v. Arango*, 912 F.2d 441, 445 (10th Cir.1990). *Id. See also, United States v. Ponce*, 947 F.2d 646, 649 (2d Cir.1991) (defendant must show legitimate basis for possessing a car, such as permission from the car owner, to have standing); *United States v. Sanchez*, 943 F.2d 110 (1st Cir.1991) (because defendant failed either to show that he had the owner's permission to use the car or to demonstrate prior use or control of the car, he was without standing to seek suppression of evidence and the circumstances tipped in favor of denying the motion to suppress). The Sixth Circuit addressed an analogous situation in *United States v. Smith*, 263 F.3d 571 (6th Cir. 2001). In particular, the *Smith* court addressed the issue of whether the driver of a rental car, who had neither rented the car nor was listed as an authorized driver on the rental agreement, had a reasonable expectation of privacy and, thus, standing to challenge its search. The *Smith* court, after discussing a number of cases in which courts have held that such a person is without standing, wrote:

> We acknowledge that as a general rule, an unauthorized driver of a rental vehicle does not have a legitimate expectation of privacy in the vehicle, and therefore does not have standing to contest the legality of a·search of the vehicle. However, we refuse to adopt a bright line test, as the government seems to advocate, based solely on whether the driver of a rental vehicle is listed on the rental agreement as an authorized driver. Such a rigid test is inappropriate, given that we must determine whether Smith had a legitimate expectation of privacy which was reasonable in light of all the surrounding circumstances.

*Id.* at 586. *See also, United States v. Seeley*, 331 F.3d 471 (5th Cir.2003) (holding that sole occupant of rental car, who was neither its renter nor authorized driver, lacked standing to challenge its search); *United States v. Haywood*, 324 F.3d 514 (7th Cir.) (concluding that the unlicensed driver of a rental car did not have a reasonable expectation of privacy in the rental car, and thus, lacked standing to object to police officers' search of it), *cert. denied*, 540 U.S. 986, 124 S.Ct. 463, 157 L.Ed.2d 378 (2003). The *Smith* court distinguished the cases it had discussed earlier and concluded that the defendant had standing because of the following circumstances. He had personally contacted the rental car company and reserved the vehicle in his name, using his own credit card, which was billed for the rental. His wife, Tracy Smith, had picked up the vehicle and furnished the agent with the reservation number which had been given to Smith. Tracy Smith presented her driver's license and signed the rental agreement. Smith was driving the vehicle at the time of the stop, and held a valid driver's license. Tracy Smith, who was both the lawful renter of the vehicle and an individual with whom Smith had an intimate relationship, had given him permission to drive the vehicle. The most important points to the Sixth Circuit were Smith's close personal relationship with the authorized driver of the rental car and his business relationship with the rental company. *See* 263 F.3d at 586–87.

Based upon the foregoing discussion of authority, it is apparent that an individual does not have a reasonable expectation of privacy in a vehicle, merely because he is its driver. Rather, the driver must demonstrate that he obtained possession from the owner of the vehicle or someone authorized by the owner to give him possession of the vehicle. In addition, the driver of a rental car, who has neither rented the

vehicle nor is listed as an authorized driver, must have had a significant relationship with an authorized driver and the rental company. Herein, Robinson failed to present any evidence that he had any type of relationship with the owner of the Lincoln Navigator. Therefore, this Court is compelled to conclude that Robinson has failed to meet his burden of proving, by the preponderance of the evidence, that he had a reasonable expectation of privacy in that vehicle. Nevertheless, Robinson makes two points to support the premise that it is reasonable to infer that he had such an expectation of privacy. *See* Doc. # 137 at 1–2. Neither of those points causes the Court to question its conclusion that Robinson is without standing to seek suppression of the evidence seized from the Lincoln Navigator. *First,* he argues that it is reasonable to infer that he had a reasonable expectation of privacy in the vehicle, because he was in control of it. Although Robinson does not explain further what is meant by being in control of the Lincoln Navigator, the Court assumes that he is referring to the fact· that he was its driver. As is seen above, however, being the driver of a vehicle, alone, does not give an individual standing to seek suppression of evidence seized as a result of that automobile being searched. *Second,* Robinson points out that Crymble testified that he (Robinson) was free to leave, after he had been given the traffic warnings. If, based upon that testimony from Crymble, this Court were to infer that Robinson had a reasonable expectation of privacy in the Lincoln Navigator, it would be required to ignore the tape of the stop of that vehicle. That tape reveals that the officer and Robinson did not discuss ownership of the Lincoln Navigator or whether the owner had given Robinson permission to drive it. Moreover, although Robinson had the opportunity to cross-examine Crymble during the evidentiary hearing, he did not ask the officer about those topics.

Accordingly, the Court concludes that Robinson is without standing to seek the suppression of the evidence that was seized from the Lincoln Navigator. However, even if he had such standing, the Court would nevertheless deny his request to suppress the fruits of the search of that vehicle, given that, for reasons that follow, it concludes that Robinson consented to its search. The Court begins its analysis by reviewing the applicable legal principles.

In *United States v. Wellman,* 185 F.3d 651 (6th Cir.1999), the Sixth Circuit restated the principles which are applicable to the question of whether a person has validly consented to a search:

> When seeking to justify a search based on consent, the government has the burden of showing by a preponderance of the evidence that the consent was freely and voluntarily given and was not the result of coercion, duress, or submission to a claim of authority. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The voluntariness of the consent is determined by the "totality of the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

*Id.* at 656–57. *Accord, United States v. Erwin,* 155 F.3d 818, 822–23 (6th Cir.1998) (*en banc*). In *United States v. Carter,* 378 F.3d 584 (6th Cir.2004) (*en banc*), the Sixth Circuit reiterated that consent to search is effective only if voluntarily and freely given and stressed that it can be "in the form of words, gestures or conduct." *Id.* at 587 (internal quotation marks and citation omitted).

Above, the Court concludes that Robinson consented to the search of the Lincoln Navigator. That finding is based in large measure on the video and audio tape of the

stop of that vehicle. That recording clearly shows that, about five minutes after the stop, Crymble returned to vehicle Robinson had been driving after having written warning tickets in his police vehicle. He gave those tickets to Robinson. Crymble explained to Robinson that there would be no penalty or fine associated with the warnings, while cautioning him to avoid speeding and driving over the white line that separates the traveled portion of the highway from the shoulder. The officer then asked Robinson for permission to search the Lincoln Navigator for weapons, controlled substances and large sums of cash. When Robinson interjected that he had a mace spray on his key chain, Crymble explained that he would be searching for large weapons and once again requested permission to search the vehicle. Robinson acceded to that request and granted Crymble permission to search the Lincoln Navigator. There is simply no evidence that the officer used any type of coercion or duress to secure that permission. On the contrary, Crymble had acted respectfully and courteously throughout the stop and had given Robinson warnings for the traffic offenses he (Crymble) had observed, rather than issuing traffic tickets. In addition, there is no indication that Robinson consented to having the Lincoln Navigator searched as a result of a submission to a show of authority by Crymble. Therefore, the Court finds that the Government proved by the preponderance of the evidence that Robinson freely and voluntarily consented to the search of the vehicle he had been driving.

■ In addition, Robinson argues that his rights under the Fourth Amendment were violated, because Crymble continued to detain him, without reasonable suspicion, after the purpose of the traffic stop had been completed. The Sixth Circuit recently reiterated that "[o]nce the purpose of an ordinary traffic stop is completed, the officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *United States v. Perez,* 440 F.3d 363, 370 (6th Cir.2006) (internal quotation marks and citations omitted). Applying that principle to instances where an officer subsequently obtains consent to search a vehicle, the Sixth Circuit has held that the defendant's consent to search his vehicle was not valid, because the officer had continued to detain him after the purposes of the traffic stop had been completed and that stop did not generate reasonable suspicion justifying that further detention. *United States v. Mesa,* 62 F.3d 159 (6th Cir.1995). *See also, United States v. Lopez–Arias,* 344 F.3d 623, 629 (6th Cir.2003) (noting that "we have repeatedly held that if a consent to search is given *after an illegal seizure,* evidence obtained pursuant to the consent to search must be suppressed, unless the consent is sufficiently attenuated from the illegal seizure such that the consent is the product of an intervening act of free will") (emphasis added). Herein, Robinson had not been illegally seized before he gave Crymble consent to search the Lincoln Navigator. After the officer had stopped that vehicle and briefly conferred with Robinson, Crymble returned to his patrol vehicle and wrote the warning citations to this Defendant. He then returned to the Lincoln Navigator, gave those warnings to Robinson and immediately obtained his consent to search that vehicle. Moreover, it is settled that an officer can request consent to conduct a search without reasonable suspicion or probable cause. *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (holding that an officer acting without reasonable suspicion did not violate the defendant's rights under the Fourth Amendment, by entering a stopped bus and asking him for consent to search his luggage). Moreover,

no unreasonable detention or delay transpired between the giving of the warning tickets and the request to search the vehicle. Indeed, the latter event occurred immediately upon the heels of the former. Accordingly, the Court rejects Robinson's assertion that he was impermissibly detained after the purpose of the stop had been completed.

Based upon the foregoing, the Court overrules Robinson's Amended Motion to Suppress Evidence (Doc. # 68).

The Government has filed a motion, requesting that the Court schedule a status conference (Doc. # 135). The Court sustains that motion, and schedules a telephone conference call on Monday, May 1, 2006, at 8:45 a.m., for the purpose of selecting a new trial date and other dates leading to the conclusion of this prosecution.