[Cite as *State v. White*, 2011-Ohio-6748.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.   11CA010005 |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARVIN R. WHITE | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | CASE No.   11CR082098 |

DECISION AND JOURNAL ENTRY

Dated: December 29, 2011

MOORE, Judge.

{¶1} Appellant, the State of Ohio, appeals from the decision of the Lorain County Court of Common Pleas, which granted in part and denied in part Marvin White's motion to suppress certain evidence. We reverse that part of the decision that granted suppression and remand for proceedings consistent with this opinion.

I.

{¶2} The Lorain County Grand Jury indicted Marvin R. White on January 19, 2011 on the following charges: one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), one count of having weapons while under disability in violation of R.C. 2923.13(A)(3), one count of carrying concealed weapons in violation of R.C. 2923.12(A)(2), one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), and one count of possession of drugs in violation of R.C. 2925.11(A).

{¶3} These charges stemmed from a traffic stop on November 18, 2010. White was traveling on State Route 2 in Amherst, Ohio as a passenger in a vehicle owned and driven by Amy Ogbarmey-Tetteh. Officer Joshua McCoy of the Amherst Police Department was driving behind Ogbarmey-Tetteh and conducted a check to see if the registration on her vehicle was valid. In response to the inquiry, the police dispatcher stated "negative," which Officer McCoy interpreted as indicating that the owner did not possess a valid driver's license. Officer McCoy requested a description of the owner from dispatch, and believing the owner to be the driver of the vehicle, he stopped Ogbarmey-Tetteh. Officer McCoy approached the vehicle from the passenger-side due to traffic conditions, and observed that White was not wearing his seatbelt. As a result, Officer McCoy requested identification from both Ogbarmey-Tetteh and White, which they provided. He then returned to his cruiser and conducted computer searches on both individuals. The results indicated that Ogbarmey-Tetteh's license was valid, but that two active warrants were outstanding for White. Officer McCoy called for back-up, and, upon his sergeant's arrival, Officer McCoy arrested White outside of Ogbarmey-Tetteh's vehicle. Officer McCoy then conducted a search of White, which revealed bags containing a rocky substance, thought to be crack cocaine, on White's person. Officer McCoy escorted White to the rear of his cruiser and returned to speak with Ogbarmey-Tetteh. After obtaining her approval, Officer McCoy conducted a search of the vehicle and found a loaded gun underneath the front passenger's seat.

{¶4} White moved to suppress the alleged drugs and the gun, which he claimed resulted from an illegal traffic stop. After the suppression hearing, the trial court granted White's motion in part and denied it in part. The trial court determined that the traffic stop was justified and that the search of White's person was a proper search incident to his arrest.

However, the trial court determined that the search of the car was improper and that the officers failed to obtain a voluntary consent for the search. Therefore, the trial court excluded the gun from evidence, as well as any statements White made regarding it. The State appealed the trial court's ruling pursuant to a Crim.R. 12(K) certification and raises three assignments of error for our review.

## II.

### ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED IN FINDING THAT WHITE HAD STANDING AND/OR AN EXPECTATION OF PRIVACY TO CHALLENGE THE SEARCH OF A VEHICLE IN WHICH HE WAS A PASSENGER."

### ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED IN PERMITTING WHITE TO ASSERT AN ALLEGED VIOLATION OF THE OWNER DRIVER'S FOURTH AMENDMENT RIGHTS REGARDING THE VOLUNTARINESS OF THE CONSENT TO SEARCH THE VEHICLE."

### ASSIGNMENT OF ERROR III

"THE TRIAL COURT ERRED IN PARTIALLY GRANTING WHITE'S MOTION TO SUPPRESS BASED, IN PART, ON AN ISSUE RAISED BY THE TRIAL COURT SUA SPONTE."

{¶5} In its first assignment of error, the State argues that the trial court erred in its determination that White had a legitimate privacy interest sufficient to allow his challenge to the search of the car and seizure of the gun. We agree. Because our disposition of the first assignment of error renders the second and third assignments moot, we decline to address them.

"Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court,

whether the facts satisfy the applicable legal standard." (Internal citations omitted.) *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8.

{¶6} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution prohibit the police from conducting unreasonable and warrantless searches and seizures. However, "Fourth Amendment rights are personal in nature and may not be vicariously asserted by others." (Citations omitted.) *State v. Dennis* (1997), 79 Ohio St.3d 421, 426. Therefore, "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself[.]" *Alderman v. United States* (1969), 394 U.S. 165, 171-72.

{¶7} Both drivers and passengers in a vehicle may challenge the validity of a traffic stop. *State v. Carter* (1994), 69 Ohio St.3d 57, 63. This is because, "when the vehicle is stopped, they are equally seized, and their freedom of movement is equally affected." Id. However, "[t]he question of whether a person may challenge the search of a vehicle in which they have placed an item of property is a distinct inquiry." *State v. Redding*, 9th Dist. No. 10CA0018-M, 2010-Ohio-4286, at ¶9; see also *Brendlin v. California* (2007), 551 U.S. 249, 256-58. Thus, the passenger of a car which was validly stopped must establish a legitimate expectation of privacy in the vehicle in order to contest its search. See *Rakas v. Illinois* (1978), 439 U.S. 128, 148 ("[Defendants] made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers."); see also *State v. McCoy*, 9th Dist. No. 08CA009329, 2008-Ohio-4947, ¶6 (defendant bears the burden of establishing legitimate expectation of privacy).

{¶8} Therefore, here, White contested the search of the Ogbartam-Tetteh's vehicle as the "fruit" of an illegal stop. See *Carter*, 69 Ohio St.3d at 363 ("The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also

evidence later discovered and found to be derivative of an illegality, or 'fruit of the poisonous tree.'"), quoting *Nardone v. United States* (1939), 308 U.S. 338. However, in the context of a valid stop, White could contest the search only if he had a "legitimate expectation of privacy" in the area searched. See *Rakas*, 439 U.S. at paragraph four of the syllabus. The trial court determined that the initial stop and the arrest were proper. Therefore, White had the burden of proving that he had a legitimate expectation of privacy in order to contest the validity of the search of Ogbartam-Tetteh's vehicle.

{¶9} At the suppression hearing, the State called Officer McCoy to testify. White did not testify and provided no evidence to establish a privacy interest. Instead, the trial court inferred a privacy interest from the State's allegations, "The state alleges that loaded weapon belonged to [White] who had placed the gun under the front passenger seat where he was sitting. The fact that it was placed where it could not be seen in plain view indicates that whoever put it there, did so with the expectation that others could not see it. Since the evidence is that [White] was in the vehicle with permission of the owner-driver, the passenger would have a reasonable expectation of privacy for any object placed out of view. The court finds that if this substantive issue of 'reasonable expectation of privacy['] is characterized as 'standing,' then [White] indeed has standing to argue a violation of his Fourth Amendment rights."

{¶10} Whether a person "took normal precautions to maintain his privacy" in a given space assists in determining whether his/her interest is one protected by the Fourth Amendment. *Rawlings*, 448 U.S. at 105. Such precautions, however, are not dispositive of that issue. See e.g. *Earley*, supra (passenger of car lacked standing to challenge search of the car where handguns were recovered from locked console between driver's and passenger's seats). Further, this case is distinguishable from a situation where a passenger could contend that he/she had an

expectation of privacy in a container located within a vehicle, as opposed to an expectation of privacy in the vehicle itself. See *U.S. v. Ross* (1982), 456 U.S. 798, 822-823 ("the Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view," although the level of such protection varies based upon the circumstances); *State v. Laird* (Jan. 30, 2002), 9th Dist. No. 3213-M, (defendant challenged search of vehicle wherein she was a passenger together with search of her purse, and this Court remanded for determination of whether drug-detecting dog alerted to her purse, which, if so, would have constituted probable cause for the search); *Redding,* at ¶11 (noting that defendant who had been a passenger in another's truck and left his suitcase therein framed his challenge to the search solely in terms of the owner-driver's privacy rights). Here, no facts indicate that the gun was found within a container in which White would have a reasonable expectation of privacy.

**{¶11}** Moreover, assuming that White did place the gun under the front seat with the subjective intent of maintaining privacy in that area of the car, it was White's burden to prove that his privacy interest was "legitimate." To do so, White was required to show that his expectation of privacy was one that "society is prepared to consider reasonable[.]" See *United States v. Jacobsen* (1984), 466 U.S. 109, 113. This required White to do more than to show a "subjective expectation of not being discovered." *Rakas*, 439 U.S. at 143 fn. 12. However, White made no showing as to either his subjective privacy interest or the legitimacy of any such interest.

**{¶12}** Accordingly, the State's first assignment of error is sustained. In light of our reversal and remand based upon the first assignment of error, the State's second and third assignments of error are rendered moot.

III.

{¶13}  The judgment is reversed to the extent it ordered suppression of evidence found within Ogbarmey-Tetteh's vehicle and evidence derived therefrom, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(E).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellant.

JENIFER BERKI, Attorney at Law, for Appellee.