[Cite as *State v. Jalloh*, 2012-Ohio-5314.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                              :

     Plaintiff-Appellee                 :          C.A. CASE NO.    24972

v.                                         :          T.C. NO.    11CR307/1

AMADU JALLOH                               :          (Criminal appeal from
                                                      Common Pleas Court)

     Defendant-Appellant                :

                                           :

        . . . . . . . . . .

# O P I N I O N

Rendered on the ___16th___ day of ____November____, 2012.

. . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
       Attorney for Plaintiff-Appellee

D. ANDREW VENTERS, Atty. Reg. No. 0083246, 314 West Main Street, Troy, Ohio 45373
       Attorney for Defendant-Appellant

. . . . . . . . . .

VUKOVICH, J. (by assignment)

{¶ 1}    Defendant-appellant Amadu Jalloh appeals the decision of the Montgomery County Common Pleas Court which denied his motion to suppress stolen property that had

been discovered after the driver gave consent to search the rental vehicle in which appellant was a passenger. Appellant argues that it was improper to seek consent to search the vehicle because the duration of the stop went beyond that necessary for the traffic stop and no other reasonable suspicion for continued detention existed.

{¶ 2} We conclude that the driver's consent was validly sought and given as the officer possessed specific and articulable facts arising during the original traffic stop which gave rise to a reasonable suspicion of criminal activity. We also agree with the state's alternative argument that the passenger failed to demonstrate that he had standing to challenge the search of this rental vehicle. Consequently, the trial court's judgment denying appellant's suppression motion is affirmed.

STATEMENT OF THE CASE

{¶ 3} Late in the night of January 5, 2011, an officer with the Huber Heights Police Department witnessed the Camaro in front of him crossing over the marked lanes multiple times, including when it made a wide right turn. (Tr. 7). The officer initiated a traffic stop for the marked lanes violation. He asked the driver where she was coming from and where she was going. She responded that she was heading back to Columbus from a friend's house in Dayton, but she could not provide the friend's name, address, or general location within Dayton. (Tr. 8).

{¶ 4} Appellant, who was the passenger, kept interrupting the driver. The officer found this unusual and noticed that appellant only knew the friend's first name. (Tr. 8, 9, 25). The officer also discovered that the Camaro was a rental car, which was not rented to either the driver or the passenger. They said it had been rented by a friend of theirs, whose

full name they could not provide to the officer.   (Tr. 10-11).

{¶ 5}   The officer ran the names of the driver and passenger through the two computer databases, finding that appellant had a prior drug conviction in New York and that he was not a citizen.   (Tr. 10).   The officer established that the car had not been reported as stolen.   The officer then asked the driver to step out of the vehicle so that he could speak to her outside of appellant's interrupting presence.   (Tr. 11).   For some reason, it took her over one minute to alight from the vehicle.   The officer then spoke to her for three to five minutes in a very friendly and casual manner.   The officer informed the driver that she was not under arrest and that she was free to go at any time but he wished to ask her a couple more questions.   (Tr. 13).   She then asked if she could sit in his car because it was cold, and the officer allowed her to sit in his cruiser.   Within a minute or two, the officer asked the driver if he could search the vehicle, and she gave consent to search.   (Tr. 11-12).

{¶ 6}   Prior to conducting the search, the officer called for the assistance of a fellow officer.   (Tr. 13).   He then approached the vehicle and asked appellant to alight therefrom.   (Tr. 13, 15).   The officer asked appellant how he knew the driver and where they had been.   Appellant could only provide the officer with the driver's first name and stated that he was coming from a gas station in Dayton.   (Tr. 14).   The officer stated that he was suspicious about what he viewed as conflicting stories and the fact that appellant kept looking down at the glove box.   (Tr. 14-16).   When the officer advised that he was going to search the vehicle, appellant protested and stated that the officer needed a search warrant.   (Tr. 15, 27).   The officer stated that this conversation lasted for three to five minutes.   (Tr. 15).

{¶ 7} When back-up arrived, the officer patted appellant down and placed him in the back of the cruiser with the driver so they could conduct the vehicle search. (Tr. 16). The officer stated that he patted appellant down for officer safety considering that both the driver and the passenger were acting nervous. (Tr. 16-17, 27). The officer then explained the situation to his fellow officer. (Tr. 17, 28).

{¶ 8} The officer began the search at the glove box, which he discovered was now locked. He also noticed that the car keys were no longer in the vehicle. The officer then asked for the keys, and appellant provided them after some hesitation. (Tr. 17). In the glove box were approximately 12 Speedway gift cards and a prepaid Visa card with a total value of $4,500. (Tr. 18). The officers found this suspicious, called Speedway, and ascertained that the cards were prepaid and active. (Tr. 18-19). They then recorded the card numbers and pin numbers but did not seize the cards. (Tr. 19).

{¶ 9} With the search complete, the driver and passenger went on their way in the vehicle without being issued any citations. (Tr. 20, 22). The officer estimated that the interaction lasted 30-35 minutes. (Tr. 20-21). Thereafter, it was discovered that the cards had been stolen. Appellant was indicted on one count of receiving stolen property regarding an individual's credit card and four counts of theft by deception regarding certain Speedway cards. All counts were fifth degree felonies.

{¶ 10} Appellant filed a motion to suppress, and a suppression hearing was held where the officer testified to the above facts. On December 6, 2011, the trial court denied appellant's suppression motion. Thereafter, appellant pled no contest to receiving stolen property, the state agreed to dismiss the four theft counts, and appellant agreed to pay restitution in the amount of $3,225. In a December 20, 2011 entry, the court ordered

restitution and sentenced appellant to six months in prison. Appellant filed a timely notice of appeal.

ASSIGNMENT OF ERROR

{¶ 11}    Appellant's sole assignment of error provides:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS, AS THE POLICE OFFICER'S INVESTIGATIVE DETENTION AND SEARCH VIOLATED APPELLANT'S FOURTH AMENDMENT RIGHTS AGAINST UNREASONABLE SEARCHES AND SEIZURES.

{¶ 12}    Appellant acknowledges that the officer possessed reasonable suspicion to stop the vehicle due to the traffic violation. Appellant contends that the duration of the stop was longer than necessary to resolve the original traffic stop as the testimony of the officer did not reveal facts that justified a further detention. He complains that the officer asked the driver questions unrelated to the stop. Appellant states that their stories were not inconsistent and that the officer was unjustified in thinking certain answers were unusual. He concludes that the officer had no right to ask the driver for consent to search, citing *State v. Retherford*, 93 Ohio App.3d 586, 595, 639 N.E.2d 498 (2d Dist.1994) (after motorist was handed ticket, officer asked to search for no articulable reason).

{¶ 13}    The state responds that the request for consent occurred before the investigation of the traffic violation had ended, thus distinguishing *Retherford*. The state urges that this case is more akin to *Riddlebaugh*, which upheld a request for consent made after the collection of information but prior to the issuance of the traffic ticket. *State v.*

*Riddlebaugh*, 2d Dist. Montgomery No. 23919, 2010-Ohio-6345 (holding that although there was no reasonable suspicion of criminal activity outside of the traffic violation, the request for consent was made within the normal time frame for issuing a traffic citation).

{¶ 14}    At a suppression hearing, the trial court serves as the trier of fact, and occupies the best position from which to resolve questions of fact and evaluate witness credibility.  *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).  In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings if they are supported by competent and credible evidence and then independently determines whether the trial court applied the proper legal standard to the facts as found.  *State v. Raines*, 2d Dist. Montgomery No. 24227, 2011-Ohio-3735, ¶ 39, citing *State v. Purser*, 2d Dist. Greene No. 2006 CA 14, 2007-Ohio-192, ¶ 11.

{¶ 15}    It is well-settled that an officer conducting a traffic stop may ask the driver a "moderate number of questions" to determine her identity and to obtain information confirming or allaying the officer's suspicions.  *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (roadside questioning to dispel suspicions is not a custodial interrogation).  It is also acceptable to ask for a passenger's identification.  *State v. Brown*, 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, ¶ 14.  And, the officer can ask a motorist stopped for a traffic violation to exit the vehicle.  *State v. Robinette*, 80 Ohio St.3d 234, 239, 685 N.E.2d 762 (1997), citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), fn. 6.  The passengers can also be asked to exit the vehicle.  *Maryland v. Wilson*, 519 U.S. 408, 414-415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

**{¶ 16}** A police officer can detain the stopped motorist for a sufficient period to issue a citation and perform routine procedures, such as running a computer check on the driver's license, registration, and license plates. *Riddlebaugh*, 2d Dist. Montgomery No. 23919, 2010-Ohio-6345, at ¶ 9. A police officer's request for consent to search a vehicle stopped for a traffic violation is valid if it is made, and voluntary consent is obtained, during the period of time reasonably necessary to process the traffic citation. *Id.* at ¶ 9-10, citing *State v. Loffer*, 2d Dist. Montgomery No. 19594, 2003-Ohio-4980, ¶ 22. *See also Robinette* at 240-241. This is true even if there is no reasonable suspicion of criminal activity besides the moving violation. *Riddlebaugh* at ¶ 9-10 (pointing out that the request for consent itself adds a negligible amount of time to the duration of the stop).

**{¶ 17}** When a police officer's objective justification to continue detaining the person stopped for a traffic violation ends and when continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure, which can invalidate a request for consent to search. *Robinette* at 239-240 (also noting that subjective motivation for continuing a stop is irrelevant). Even if the officer should not have further detained the driver, consent can be validated if a reasonable person would have believed they were free to go. *Id.* at 241.

**{¶ 18}** If during the initial valid detention of a motorist, a police officer notices additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, then the officer may further detain the motorist and conduct a more in-depth investigation, including a request for consent to

search. *State v. Studley*, 2d Dist. Greene No. 2010 CA 81, 2011-Ohio-5563, ¶ 57.

{¶ 19} Here, the motorist was repeatedly crossing marked lanes late at night, which could cause some concerns of driving under the influence and result in a desire to elicit speech from the driver. And, she was driving a brand new rented Camaro that neither she nor the passenger had rented, which could cause some concerns that the car was being driven unlawfully. This is even more troubling when neither the driver nor the passenger knew the name of the person who rented the car.

{¶ 20} Officers commonly ask motorists where they are coming from or where they are going, and this driver claimed that she did not know the name of the person whose house she had been at or where in Dayton that house was located. *See Berkemer*, 468 U.S. at 442. *See also Pennsylvania v. Bruder*, 488 U.S. 9, 11, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988) (single officer asking modest number of questions is standard in traffic stops). This minimal collecting of information lasted less than three minutes.

{¶ 21} The officer then ran their names through various systems and checked to see if the car had been reported as stolen. *See Riddlebaugh*, 2d Dist. Montgomery No. 23919, 2010-Ohio-6345, at ¶ 9. It took him over 15 minutes to run their information. However, as can be heard on the video exhibit, that is essentially how long it took the person on the other end of the telephone to find and convey the information back to him. Notably, the driver did not provide the officer with a driver's license, the passenger goes by a different name than his official name, and the rental car situation was suspicious. The officer noted in his testimony that merely because a rental car has not been reported stolen at the time the officer runs the search does not mean that the car is not stolen. (Tr. 25-26).

There is no indication that an unreasonable amount of time for an investigation regarding the traffic stop had passed at that point.

{¶ 22} Upon obtaining the information that the person whose name the driver provided did have a valid license, that neither the driver nor the passenger had outstanding warrants, and that the car had not been reported stolen, the officer returned to the stopped vehicle. As the passenger interrupted the driver's answers, both occupants acted nervous, and the driver did not know the full name of the person who let her drive his rental car, it was reasonable for the officer to determine that it may be advisable to ask the driver to exit the vehicle so he could reiterate his standard questions to her alone. Notably, it took her over a minute to alight from the vehicle as she seemed to have difficulty removing her seatbelt. The officer then spoke to the driver for three to five minutes, during which he asked for her consent to search the vehicle.

{¶ 23} The state maintains that the traffic citation had not been yet issued and thus urges that consent was valid because it occurred during the time involved for the original traffic stop. To the contrary, the video exhibit reveals that, prior to asking for consent to search, the officer had advised the driver that he was not going to issue her a ticket for the traffic offense. Appellant thus alleges that the driver's consent was invalid because the officer had no reasonable suspicion of additional criminal activity.

{¶ 24} However, the aforementioned facts are relevant to this analysis as well. That is, it is unusual that neither the person driving a brand new Camaro nor the passenger would know the full name of the person who rented the vehicle from the rental car agency. This is especially true where they were traveling from Columbus to Dayton and back, as

opposed to briefly using someone's rental car to drive down the street. Also unusual was the fact that the passenger kept interrupting the driver even though he was not licensed to drive and the fact that the driver claimed to have no driver's license in her possession even though she was carrying a purse.

{¶ 25} The totality of the facts herein would cause more than a mere inchoate hunch or unparticularized suspicion in a reasonable police officer. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991) (the totality of the circumstances are viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold); *State v. Freeman*, 64 Ohio St.2d 291, 295, 414 N.E.2d 1044 (1980) (whether an investigative stop is reasonable must be determined from the totality of the circumstances that surround it). Rather, the totality of the circumstances combined with rational inferences that can be drawn from the situation provided the officer reasonable suspicion to ask further questions of the driver and to request her consent. *See id.* That is, even if the reason for the traffic stop was over as the officer had expressed his intent to refrain from issuing a ticket for a marked lanes violation, the officer had an objectively reasonable suspicion besides the original reason for the stop, that being whether the vehicle was being driven without permission.

{¶ 26} Regardless, the officer informed the driver that she was not being cited and that she was free to leave. The evidence shows that she knew she could leave as *she* instructed the officer that she would only talk to him longer if they sat in his car out of the cold, showing that further discussion was consensual. Moreover, there was only one officer

present at the time consent to search was sought, the officer did not display a weapon or block her path, he did not pat her down, and his tone and demeanor were very friendly and casual. *See, e.g., State v. Belcher*, 2d Dist. Montgomery No. 24385, 2011-Ohio-5015, ¶ 22. Thus, her consent appears to have been voluntarily provided in any event. *See Robinette*, 80 Ohio St.3d at 241, 685 N.E.2d 762.

{¶ 27} Considering the totality of the facts and circumstances herein, we conclude that the detention at the time the officer sought consent was not unduly lengthy and that he did have reasonable suspicion to continue asking questions about the vehicle and the parties' relationship thereto.

{¶ 28} The state presents an alternative argument based upon a federal district court case, *United States v. Taylor*, 496 F.Supp.2d 852 (S.D.Ohio 2006). That court held that if a driver is not the person who rented a vehicle and is not listed as an authorized driver, then the driver has the burden of showing a significant relationship with the rental car company and with an authorized driver. *Id.* at 856-857 (after holding that "an individual does not have a reasonable expectation of privacy in a vehicle, merely because he is its driver"). *See also United States v. Valdez Hocker*, 333 F.3d 1206 (10th Cir.2003) (mere possession of car and keys does not establish possessory interest; rather, driver has burden to show that he gained possession from the owner or someone with authority to grant permission).

{¶ 29} The state concludes that such a relationship was not established for either the driver or the passenger, noting the opposite was established as neither even knew the name of the person who rented the vehicle. Thus, the state posits that appellant had no

standing to challenge the search of the vehicle.

{¶ 30}    Notably, a passenger has a right to challenge the legality of a traffic *stop*. *Brendlin v. California*, 551 U.S. 249, 259, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007); *State v. Carter*, 69 Ohio St.3d 57, 63, 630 N.E.2d 355 (1994).    However, the question of a passenger's right to challenge a *search* of another's vehicle is a distinct matter.  *See, e.g., State v. White*, 9th Dist. Lorain No. 11CA10005, 2011-Ohio-6748, ¶ 7, citing *Brendlin*, 551 U.S. at 256–258.

{¶ 31}    This court recently reiterated that a passenger has no standing to challenge the vehicle's search if that passenger has no proprietary or possessory interest in the vehicle.  *State v. Parker*, 2d Dist. Montgomery No. 24406, 2012-Ohio-839, ¶ 27, citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).    Other courts follow this holding as well.  *See, e.g., State v. Davy*, 8th Dist. Cuyahoga No. 90774, 2008-Ohio-6952, ¶ 12.

{¶ 32}    Thus, considering that this was a rental car and neither the driver nor the passenger established that they were authorized users or that they even knew the name of the person who rented the car or that they had a relationship with the renter or the rental car company, we conclude that appellant, as the passenger, lacked standing to challenge the search of the vehicle conducted with the driver's consent.

{¶ 33}    In conclusion, the consent was validly given by the driver as the officer noticed specific and articulable facts arising during the original traffic stop which gave rise to a reasonable suspicion of criminal activity.  Regardless, the passenger failed to show that he had standing to challenge to search the rental vehicle.  Accordingly, appellant's

suppression arguments are overruled.

{¶ 34} Judgment affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

(Hon. Joseph J. Vukovich, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

R. Lynn Nothstine
D. Andrew Venters
Hon. Frances E. McGee