[Cite as *State v. Taylor*, 2013-Ohio-3906.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26693 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GARY A. TAYLOR | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 03 0888 |

DECISION AND JOURNAL ENTRY

Dated: September 11, 2013

MOORE, Presiding Judge.

**{¶1}** Defendant, Gary A. Taylor, appeals from the judgment of the Summit County Court of Common Pleas. We reverse and remand this cause for further proceedings consistent with this opinion.

I.

**{¶2}** On February 24, 2012, Officer Edward Hornacek of the City of Akron Police Department initiated a traffic stop on a car that Christine Hersman was driving and in which Mr. Taylor was a passenger. The stop ultimately led to the officer's search of Ms. Hersman's car and the discovery of items believed to be used in the manufacture of methamphetamine. As a result, the Summit County Grand Jury indicted Mr. Taylor on one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A).

**{¶3}** Mr. Taylor moved to suppress the evidence, the discovery of which he argued, in part, resulted from an illegal stop of Ms. Hersman's car. After holding an evidentiary hearing,

the trial court denied his motion. Thereafter, Mr. Taylor amended his plea to no contest, and the trial court found him guilty on the sole charge. In a journal entry dated October 11, 2012, the trial court imposed sentence.

{¶4} Mr. Taylor timely filed a notice of appeal from the sentencing entry, and he now presents one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING [MR. TAYLOR]'S MOTION TO SUPPRESS.[]

{¶5} In his sole assignment of error, Mr. Taylor argues that the trial court erred in denying his motion to suppress. We agree.

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. *Accord State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 6 (*Burnside* applied).

{¶6} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution prohibit law enforcement from conducting unreasonable and warrantless searches and seizures. "[W]arrantless searches are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions. The [S]tate has the burden of establishing the application of one of the exceptions to this rule designating warrantless searches as per se unreasonable." (Internal citations and quotations

omitted.)  *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978).  Courts are required to exclude evidence obtained by means of searches and seizures that are found to violate the Fourth Amendment.  *Mapp v. Ohio*, 367 U.S. 643, 657 (1961).

{¶7}  A police-initiated stop of an automobile is a seizure under the Fourth Amendment and falls within the purview of *Terry v. Ohio*, 392 U.S. 1 (1968).  *See Delaware v. Prouse*, 440 U.S. 648, 653, 663 (1979).  "Both drivers and passengers in a vehicle may challenge the validity of a traffic stop."  *State v. White*, 9th Dist. Lorain No. 11CA010005, 2011-Ohio-6748, ¶ 7, citing *State v. Carter*, 69 Ohio St.3d 57, 63 (1994).  "This is because, 'when the vehicle is stopped, they are equally seized, and their freedom of movement is equally affected.'"  *White* at ¶ 7, quoting *Carter* at 63.  Pursuant to *Terry*, officers must possess a reasonable suspicion of criminal activity in order to justify a traffic stop.  *See Terry* at 21.  In forming reasonable articulable suspicion, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"  *United States v. Arvizu*, 534 U.S. 266, 273 (2002), quoting *United States v. Cortez*, 449 U.S. 411, 417-418 (1981).  However, "[a]n officer's reliance on a mere 'hunch' is insufficient to justify a stop."  *State v. Wagner-Nitzsche*, 9th Dist. Summit No. 23944, 2008-Ohio-3953, ¶ 11, quoting *Arvizu* at 274.

{¶8}  At the hearing on Mr. Taylor's motion to suppress, Officer Hornacek testified as to his reasons for stopping Ms. Hersman's car.  Officer Hornacek recounted that, on February 24, 2012, Officer Eddie Boyd was working off-duty as a security officer at Roush's Market in Akron, Ohio.  Officer Boyd had been working this side-job at the market for approximately twenty years.  Roush's Market is a small grocery store.  Officer Hornacek noted that, over the past two years, he had responded to approximately twenty calls from Officer Boyd pertaining to

the purchase of lye at the market. Through his experience as a police officer, Officer Boyd recognized that lye is one ingredient that may be used in the manufacturing of methamphetamine. Of the twenty calls to which Officer Hornacek had responded, all but one had resulted in his detection of methamphetamine-related offenses.

{¶9} On the date at issue, Mr. Taylor and Ms. Hersman entered the market and purchased various snacks and a bottle of lye. Officer Hornacek maintained that Officer Boyd radioed in the purchase of the lye to police dispatch, and, when doing so, he noted that the individuals who had purchased the lye were "suspicious" in that they were unfamiliar to him. Officer Hornacek responded to the call by following Ms. Hersman's car. The officer ran the license plates of the car, learning that it belonged to Ms. Hersman and that it was registered to her at an address in Louisville, which is located in neighboring Stark County, Ohio. Based upon the address of the registration, Officer Hornacek believed that Ms. Hersman and Mr. Taylor had driven from Louisville to the market, which is approximately a thirty to forty minute drive, for the purpose of purchasing lye. Officer Hornacek believed this behavior, driving to an out-of-the-way, small, grocery store to purchase a single item used in the manufacture of methamphetamine, to be consistent with behavior of those involved in the manufacture of methamphetamine, as such individuals proceed in this manner in order to escape detection. Therefore, without having observed any criminal behavior or traffic infraction, Officer Hornacek initiated a traffic stop on Ms. Hersman's car.

{¶10} In the trial court's decision denying the motion to suppress, the trial court determined that the stop was based upon a reasonable suspicion of criminal activity, reasoning as follows:

> * * * As noted above, [Mr. Taylor] and his driver had apparently travelled 30 miles from another county to purchase a bottle of powdered lye, a bottle of soda

and a candy bar or two. Each of these items could have readily been purchased at many stores between Louisville and Akron. Defendant and his driver were Caucasians shopping at a small market in the predominantly African-American part of Akron where Roush's Market is located. Under similar circumstances in the past, the police had apprehended approximately 19 suspects on methamphetamine manufacture or illegal assembly charges, thus supporting the reasonable inference that methamphetamine manufacturers may have spread the word that Roush's sold what they needed and was an out-of-the-way store where necessary items could be purchased. The court concludes these facts provided police with specific articulable facts upon which to base a suspicion that defendant and his companion, already having satisfied one element of the illegal assembly offense, were in possession of lye in order to manufacture a controlled substance.

{¶11} On appeal, Mr. Taylor first argues that the police officers impermissibly stopped him on the basis of his race. After reviewing the transcript of the suppression hearing, we can locate nothing in Officer Hornacek's testimony explicitly referencing the race of Mr. Taylor. Although another officer who responded to the scene after Officer Hornacek had initiated the stop noted that Mr. Taylor and Ms. Hersman were "two white people," Officer Hornacek did not testify that their race was a factor in his suspicion of criminal activity. Further, we can locate nothing from the testimony adduced at the hearing which would support the trial court's conclusion pertaining to the racial demographics of the neighborhood in which the market is located. In any event, we cannot discern in what way the race of Mr. Taylor as compared to the racial composition of the community would serve as a factor on which the officer could properly base his suspicion of criminal behavior. Accordingly, we proceed to review the totality of the factors that the officer indicated informed his suspicion of criminal activity.

{¶12} Officer Hornacek testified that he believed that Mr. Taylor and Ms. Hersman were involved in the manufacture of methamphetamine because their vehicle was registered in another county, they purchased lye in a small market thirty to forty minutes away from the address where the car was registered, they were unfamiliar to and "suspicious" to Officer Boyd, and he had

apprehended nineteen other individuals in the past two years for methamphetamine-related offenses after these individuals purchased lye from the market.

{¶13} Having reviewed the totality of these circumstances, we conclude that the State failed to meet its burden of demonstrating that Officer Hornacek possessed a reasonable suspicion of criminal activity to justify his stop of Ms. Hersman's vehicle. In reaching this conclusion, we are mindful that, "[a] court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *State v. Floyd*, 9th Dist. No. 11CA010033, 2012-Ohio-990, ¶ 4, quoting *State v. Andrews*, 57 Ohio St.3d 86, 88 (1991). However, based upon the limited factors of Ms. Hersman's vehicle registration listing an address in an adjacent county, Officer Boyd's unfamiliarity with Ms. Hersman and Mr. Taylor, and their purchase of a single item that is not itself illegal to possess, we cannot conclude that the factors relied on by Officer Hornacek provided more than a "hunch" that criminal behavior was afoot. *See Wagner-Nitzche* at ¶ 15. There was no testimony that Ms. Hersman on the day in question drove from the Stark County residence past any other stores to travel to Rousch's Market. There was no testimony from anyone as to whether she was visiting in the neighborhood, had friends or family there etc. In fact, Ms. Hersman testified to having moved to a specific Akron address more than three months before the stop giving rise to these charges. The fact that she and her passenger were unfamiliar to the private duty officer does not provide reasonable suspicion for any illegal activity.

{¶14} Accordingly, Mr. Taylor's sole assignment of error is sustained.

III.

{¶15} Mr. Taylor's assignment of error is sustained.  The judgment of the Summit County Court of Common Pleas is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

DAVID G. LOMBARDI, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.