[Cite as *State v. Simmons*, 2014-Ohio-4191.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27197 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| AARON J. SIMMONS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE Nos. CR 13 07 1991<br>CR 13 08 2208 |

DECISION AND JOURNAL ENTRY

Dated: September 24, 2014

MOORE, Judge.

{¶1} Defendant-Appellant, Aaron J. Simmons, appeals from the December 12, 2013 judgment entries of the Summit County Court of Common Pleas. We affirm.

I.

{¶2} This matter arises from two separate incidents involving the same three individuals: Mr. Simmons, Ms. Kayla Hale, and Mr. Daryle Dean. The first incident occurred at the Circle K gas station when Mr. Dean approached his estranged wife, Ms. Hale, as she was pumping gas.[1] Mr. Dean grabbed Ms. Hale's arm and began questioning her about Mr. Simmons. While this was happening, Mr. Simmons was seated in the passenger's seat of Ms. Hale's car, and Ms. Hale's two young children were in the back seat. Mr. Simmons got out of the car and began arguing with Mr. Dean, and Ms. Hale asked Mr. Simmons to drive her children

---

[1] Ms. Hale and Mr. Dean had a child together and she had a protection order against Mr. Dean at this time.

to a nearby parking lot. Mr. Simmons complied and when the police arrived, Mr. Dean stated that Mr. Simmons threatened him with a gun. The police searched Mr. Simmons' person, but did not find a weapon. Mr. Dean then told the police that the gun was in Ms. Hale's car, and during a second search, they discovered a black and silver Taurus .45 caliber semiautomatic pistol.

{¶3} The second incident occurred several weeks later, when Mr. Simmons and Ms. Hale allegedly drove past Mr. Dean's house, pointed a gun at him, and threatened him, saying: "[i]t ain't over with yet[.]"

{¶4} In Case No. CR 13 07 1991, Mr. Simmons was indicted for having weapons while under disability, in violation of R.C. 2923.13(A)(3), a felony of the third degree; carrying concealed weapons, in violation of R.C. 2923.12(A)(2), a felony of the fourth degree; and aggravated menacing, in violation of R.C. 2903.21, a misdemeanor of the first degree. In Case No. CR 13 08 2208, Mr. Simmons was indicted for intimidation of a crime victim or witness, in violation of R.C. 2921.04(B), a felony of the third degree, with a firearm specification pursuant to R.C. 2941.145; possession of cocaine, in violation of R.C. 2925.11(A)(C)(4), a felony of the fifth degree; violating a protection order, in violation of R.C. 2919.27, a misdemeanor of the first degree; aggravated menacing, in violation of R.C. 2903.21, a misdemeanor of the first degree; and possession of marijuana, in violation of R.C. 2925.11(A)(C)(3), a minor misdemeanor.

{¶5} Mr. Simmons pleaded not guilty to all charges and filed a motion to suppress. After a hearing, the trial court denied Mr. Simmons' motion, and these matters proceeded to jury trial. The jury resolved Case No. CR 13 07 1991 by finding Mr. Simmons guilty of (1) having weapons while under disability, (2) carrying concealed weapons, and (3) aggravated menacing. Additionally, in Case No. CR 13 08 2208, the trial court dismissed the charge of possession of cocaine, and the jury found Mr. Simmons not guilty of (1) intimidation of a crime victim or

witness, with a firearm specification, (2) violating a protection order, and (3) aggravated menacing. The jury, however, did find Mr. Simmons guilty of possession of marijuana.

{¶6} The trial court sentenced Mr. Simmons to 30 months' imprisonment for having weapons while under disability, which, pursuant to *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, merged with the charge of carrying concealed weapons, and six months in the Summit County Jail for aggravated menacing, to run concurrently with one another. The trial court also ordered Mr. Simmons to pay a fine of $150 for possession of marijuana, suspended his driver's license for six months, and further ordered him to have no contact with Mr. Dean.

{¶7} Mr. Simmons appealed, raising five assignments of error for our consideration. To facilitate our discussion, we will address Mr. Simmons' assignments of error out of order.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY DENYING [MR. SIMMONS'] MOTION TO SUPPRESS.

{¶8} In his first assignment of error, Mr. Simmons argues that the trial court erred in denying his motion to suppress. Specifically, Mr. Simmons argues that Ms. Hale "never gave specific consent to the Akron Police to search her vehicle." The State responds by arguing that Mr. Simmons did not have standing to contest the search of Ms. Hale's vehicle because he does not own it, nor did he present any evidence at the suppression hearing of an expectation of privacy in the vehicle.

{¶9} In *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, the Supreme Court of Ohio set forth the appellate standard of review on motions to suppress, stating:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of

trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. (Citations omitted.)

{¶10} "The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution prohibit the police from conducting unreasonable and warrantless searches and seizures." *State v. White*, 9th Dist. Lorain No. 11CA010005, 2011-Ohio-6748, ¶ 6. "However, 'Fourth Amendment rights are personal in nature and may not be vicariously asserted by others.'" (Citations omitted.) *White* at ¶ 6, quoting *State v. Dennis*, 79 Ohio St.3d 421, 426 (1997). Therefore, "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself[.]" *Alderman v. United States*, 394 U.S. 165, 171–72 (1969).

{¶11} "Both drivers and passengers in a vehicle may challenge the validity of a traffic stop." *White* at ¶ 7, citing *State v. Carter*, 69 Ohio St.3d 57, 63 (1994). "This is because, 'when the vehicle is stopped, they are equally seized, and their freedom of movement is equally affected.'" *Id.* "However, '[t]he question of whether a person may challenge the search of a vehicle in which they have placed an item of property is a distinct inquiry.'" *White* at ¶ 7, quoting *State v. Redding,* 9th Dist. Medina No. 10CA0018-M, 2010-Ohio-4286, ¶ 9; *see also Brendlin v. California*, 551 U.S. 249, 256-58 (2007). "Thus, the passenger of a car which was validly stopped must establish a legitimate expectation of privacy in the vehicle in order to contest its search." *White* at ¶ 7; citing *Rakas v. Illinois*, 439 U.S. 128, 148 (1978) ("[Defendants] made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers."); *see also State v. McCoy,* 9th Dist. Lorain No. 08CA009329, 2008-Ohio-4947, ¶ 6 (the defendant bears

the burden of establishing a legitimate expectation of privacy). This legitimate expectation of privacy may be established by the defendant's testimony or otherwise be established by the evidence at the suppression hearing. *See Simmons v. United States*, 390 U.S. 377, 390 (1968).

{¶12} In the present matter, it is undisputed that Ms. Hale owned the vehicle in question, and that Mr. Simmons only challenged the *search* of the vehicle. As such, Mr. Simmons had to point to evidence that demonstrated his legitimate expectation of privacy in Ms. Hale's vehicle. *See White* at ¶ 10 (observing that "no facts indicate that the gun was found within a container in which [Mr.] White would have a reasonable expectation of privacy."). At the suppression hearing, Akron Police Officers Edward Patalon and Dean Prosperi testified that Ms. Hale twice gave them permission to search her vehicle for Mr. Simmons' alleged gun. Officer Prosperi further testified that, during the second search of the vehicle, he found a loaded black and silver Taurus .45 caliber semiautomatic pistol underneath the carpeted area by the plastic console.

{¶13} In order to effectively argue that the search of Ms. Hale's vehicle violated his Fourth Amendment rights, Mr. Simmons "was required to show that his expectation of privacy was one that 'society is prepared to consider reasonable[.]'" *White* at ¶ 11, citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). "This required [Mr. Simmons] to do more than to show a 'subjective expectation of not being discovered,'" through his placement of the gun under the carpeted area of the vehicle. *White* at ¶ 11, citing *Rakas,* 439 U.S. at 143 fn. 12; *see also State v. Earley*, 9th Dist. Wayne No. 99CA0059, 2000 WL 840506, *4 (June 28, 2000), (concluding that a defendant passenger did not have standing to contest the validity of the search of a vehicle when he failed to show that he had a legitimate expectation of privacy in the vehicle's console). However, the officers' testimony does not support the conclusion that Mr. Simmons had a legitimate expectation of privacy in Ms. Hale's vehicle, nor did Mr. Simmons testify or present

any evidence to support that conclusion. Therefore, because the suppression record before us does not establish that Mr. Simmons had a legitimate expectation of privacy in Ms. Hale's vehicle, we cannot say that his Fourth Amendment rights were violated in this instance.

{¶14} Accordingly, Mr. Simmons' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A FINDING OF GUILT FOR HAVING WEAPON[S] WHILE UNDER DISABILITY, CARRYING CONCEALED WEAPON[S], AND AGGRAVATED MENACING.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY NOT GRANTING DEFENSE COUNSEL'S CRIMINAL RULE 29 MOTION.

{¶15} In his second and fourth assignments of error, Mr. Simmons argues that there is insufficient evidence to support his convictions for having weapons while under disability, carrying concealed weapons, and aggravated menacing. As such, Mr. Simmons also argues that the trial court erred in denying his Crim.R. 29 motion for acquittal.

{¶16} In determining whether a conviction is supported by sufficient evidence:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. *See also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Id.*

{¶17} Further, Crim.R. 29(A) provides, in relevant part, that:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The

court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

Having weapons while under disability

{¶18}  R.C. 2923.13 states, in relevant part, that:

(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶19}  As stated above, Officer Prosperi discovered a black and silver Taurus .45 caliber semiautomatic pistol in Ms. Hale's vehicle.  On direct examination, Mr. Dean testified that Mr. Simmons threatened him with this gun at the Circle K gas station.  Additionally, Officer Patalon testified that, after completing his initial investigation, he ran a criminal case history on Mr. Simmons "which brings up the prior convictions of a particular person which may exclude him from possessing a firearm."  Officer Patalon indicated that he conducted this search by using the birthdate and social security number provided to him by Mr. Simmons.  As a result, Officer Patalon discovered that Mr. Simmons had previously been convicted of trafficking in marijuana, a fourth degree felony. *See State v. Ward*, 9th Dist. Lorain No. 09CA009720, 2011-Ohio-518, ¶ 18 (Pursuant to R.C. 2923.13(A)(3), marijuana is a "drug of abuse.").  Further, the State introduced evidence of a certified copy of Mr. Simmons' September 29, 1995 Hamilton County sentencing entry for trafficking in marijuana.

{¶20}  In viewing this evidence in a light most favorable to the prosecution, we conclude that a rational jury could have found the essential elements of having weapons while under disability proven beyond a reasonable doubt.

Carrying concealed weapons

{¶21}  Pursuant to R.C. 2923.12: "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: * * * (2) a handgun other than a dangerous ordnance[.]"

{¶22}  On direct examination, Mr. Dean testified as follows:

[The State]:  So [] Mr. Simmons asks who you are and you say [Ms. Hale's] husband?

[Mr. Dean]:  Uh-huh.

[The State]:  What happens next?

[Mr. Dean]:  [Mr. Simmons] reached in his – somewhere in his front pants, or whatever that is, and brandished a silver handgun, and he cocked it.  And I know when he cocked it he had loaded the chamber, you know.  And when he did that I just looked at him like, okay, you got your gun.  You pulled out your gun on me, you know what I'm saying?  Now what?

Because my focus was on my wife because I immediately grabbed her and pushed her towards the gas station because I didn't know what he was going to do with this gun.

And once I got her up towards the gas station area that's when I began to question her, like:  Who is this guy that's pulling this gun out on me.

* * *

So [while] we were, you know, basically in a confrontation about who this guy is, by that time he had jumped in the car with my daughter and stepson in the car and he pulled off.

Well, that's when me and [Ms. Hale], we both started running toward the car.  By that time he had parked on the other side of the gas station over by this little deli and got out of the car and he started coming towards us.

And by the time we got, not even five feet, ten feet from one another, the police pulled up and they told him to get down on the ground. And when they came I immediately told them, you know: He's got a gun, you know.

And they searched the car. They initially searched it and they kept looking and they said they didn't see a gun. And I'm telling them there is a gun in that car, you know. And * * * everybody was asking me why I didn't leave, you know. I wasn't about to leave, not with my daughter in the back seat of that car. So I kept pressing the issue, like: There is a gun in that car.

And they searched it, I think, a second time and that's when they found the gun.

* * *

Additionally, Officer Patalon testified that when he arrived at the scene, Mr. Dean was "very agitated and very adamant over and over again that Mr. Simmons threatened him with a gun." Mr. Dean also identified State's Exhibit 2 at trial as the gun Mr. Simmons "pulled" on him.

{¶23} In viewing this evidence in a light most favorable to the prosecution, we conclude that a rational jury could have found the essential elements of carrying concealed weapons proven beyond a reasonable doubt.

Aggravated menacing

{¶24} R.C. 2903.21 states, in relevant part, that: "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶25} As indicated above, the State presented evidence that Mr. Simmons threatened Mr. Dean with a black and silver Taurus .45 caliber semiautomatic pistol, and then drove away in Ms. Hale's vehicle with Mr. Dean's daughter in the back seat. Further, Mr. Dean testified that Mr. Simmons cocked the gun, and that he was "scared" for his daughter's safety, causing him to run after the car.

{¶26} In viewing this evidence in a light most favorable to the prosecution, we conclude that a rational jury could have found the essential elements of aggravated menacing proven beyond a reasonable doubt.

{¶27} Therefore, based upon the foregoing, the State presented sufficient evidence to support Mr. Simmons' convictions for having weapons while under disability, carrying concealed weapons, and aggravated menacing. The trial court did not err in denying Mr. Simmons' Crim.R. 29 motion.

{¶28} Accordingly, Mr. Simmons' second and fourth assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE VERDICT OF GUILTY FOR HAVING WEAPON[S] WHILE UNDER DISABILITY, CARRYING CONCEALED WEAPON[S], AND AGGRAVATED MENACING WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶29} In his third assignment of error, Mr. Simmons asserts that his convictions for having weapons while under disability, carrying concealed weapons, and aggravated menacing are against the manifest weight of the evidence. However, Mr. Simmons only specifically develops a weight of the evidence argument regarding his conviction for having weapons while under disability. We limit our discussion accordingly.

{¶30} When a defendant asserts that his conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶31}** In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

**{¶32}** Here, Mr. Simmons argues that the testimony of Officer Dean Reed "clearly refutes" Officer Patalon's testimony that Mr. Simmons "could be connected to the 1995 conviction in Hamilton County using the LEADS computer."

**{¶33}** As previously stated, Officer Patalon testified that he used Mr. Simmons' birthdate and social security number to run a criminal case history report in order to find any prior convictions which may exclude Mr. Simmons from possessing a firearm. In doing so, Officer Patalon discovered that Mr. Simmons had a 1995 conviction for trafficking in marijuana, which would prevent him from possessing a firearm. Officer Patalon explained that he requested a copy of the criminal case history from *the office where LEADS is located* and Mr. Simmons' unique identifiers, (name, birthdate and social security number), matched up with the 1995 conviction.

**{¶34}** Officer Reed testified that, on a subsequent occasion, he ran Mr. Simmons' social security number through LEADS in the police cruiser, and found that Mr. Simmons had a felony warrant. When asked whether LEADS shows "any prior criminal history," Officer Reed responded, "[i]n our computers it doesn't show any previous charges, no."

**{¶35}** We note that Officer Patalon did not testify that he *got* Mr. Simmons' criminal case history through LEADS, but that he *requested* it from the office where LEADS is located. Additionally, even if Officers Patalon and Reed testified differently about LEADS' functionality, the jury was free to believe the testimony of Officer Patalon over that of Officer Reed. *See State*

*v. Howard*, 9th Dist. Lorain No. 13CA010372, 2014-Ohio-3373, ¶ 57; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35 ("[I]n reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness.").

**{¶36}** Therefore, after review of the record, we cannot conclude that this is the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice. *See Otten,* 33 Ohio App.3d at 340.

**{¶37}** Accordingly, Mr. Simmons' third assignment of error is overruled.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY SENTENCING [MR. SIMMONS] TO THIRTY MONTHS IN PRISON.

**{¶38}** In his fifth assignment of error, Mr. Simmons argues that, in sentencing him to 30 months of imprisonment, the trial court failed to comply with the sentencing guidelines set forth in R.C. 2929.11.

**{¶39}** This Court reviews sentences pursuant to the two-step approach set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912.

> First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard.

*Id*. at ¶ 26. Further, in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus, the Supreme Court of Ohio held that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum * * * sentences."

> [N]evertheless, in exercising its discretion, the [trial] court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides

guidance in considering factors relating to the seriousness of the offense and recidivism of the offender.

*State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38. "An abuse of discretion implies that the court's decision is arbitrary, unreasonable, or unconscionable." *Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶ 8, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶40}** R.C. 2929.11 sets forth Ohio's guidelines for felony sentencing as follows:

(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

(C) A court that imposes a sentence upon an offender for a felony shall not base the sentence upon the race, ethnic background, gender, or religion of the offender.

**{¶41}** In the present matter, the trial court sentenced Mr. Simmons to 30 months' imprisonment, which falls within the statutory range of 36 months for third degree felonies of this nature. *See* R.C. 2929.14(A)(3)(b). The record reflects that the trial court had before it information from which it could make the required inquiry pursuant to R.C. 2929.11. Additionally, to the extent Mr. Simmons argues, pursuant to R.C. 2929.11(B), that he and Mr. Dean received inconsistent sentences for similar crimes, the record before us does not support this contention. As such, Mr. Simmons' sentence is not contrary to law.

{¶42} Further, based upon Mr. Simmons' criminal record dating back to 1992[2], the higher likelihood of recidivism as noted in the PSI report, the State's and probation department's recommendation that Mr. Simmons be sentenced to the Ohio Department of Rehabilitation and Corrections, Mr. Dean's victim impact statement, the trial court's concern that Mr. Simmons had a loaded .45 semiautomatic pistol in a vehicle with two minor children, the fact that the trial court did not sentence Mr. Simmons to the maximum time allowed by statute, and the trial court's statement that it considered all "relevant sentencing factors and the Revised Code," we cannot conclude that the trial court's sentence of 30 months' imprisonment was arbitrary, unreasonable, or unconscionable.

{¶43} Therefore, the trial court did not abuse its discretion in sentencing Mr. Simmons to 30 months' imprisonment for having weapons while under disability.

{¶44} Accordingly, Mr. Simmons' fifth assignment of error is overruled.

### III.

{¶45} In overruling Mr. Simmons' five assignments of error, the judgments of the Summit County Court of Common Pleas are affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

---

[2] The trial court ordered a pre-sentence investigation ("PSI") report which was supplemented into the record on appeal and reviewed by this Court.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR.


APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.